STATE *v.* CHARLES WALKER.

*Criminal Law: Confessions. Evidence.*

Confessions by a person charged with a crime made under promises or threats, inducing hope or fear, are not admissible in evidence against such person when on trial for the crime.

Where the owner of a factory, which the respondent was charged with burning, visited the respondent at his request in jail, and in course of the conversation told him he wanted he should tell the truth just as it was ; that it would be better for him ; that they had got Brierly, (another person charged

with the same crime,) and probably they would both be tried that day ; that it would be better to tell the truth just as it was, for if Brierly should get the start of him it might go hard with him ; that he was a young man, and he had better tell the truth as it was ; and thereupon the respondent confessed the crime ; *Held,* the confession was made under such inducements of hope and fear as would exclude it on trial of the respondent for the offence.

This was an indictment for burning the factory of Thomas Greenbank, tried at December term, 1860, BARRETT J., presiding.

On trial by jury, the prosecution gave evidence tending to prove that a woolen factory building, owned by Thomas Greenbank, and situated in Gaysville, a village in the town of Stockbridge, in Windsor county, was burned in the night time between the 5th and 6th of August, 1860, the fire having been first discovered about one o'clock on the morning of August 6th :

The prosecution, also, gave evidence tending to show that one Brierly, sometime in June, had been employed by said Greenbank to work by the job in doing a department of the work in said factory in the place of one Andrews, who had theretofore been doing said work, and for whom the respondent had been at work ; that the respondent, who was quite a youth, being eighteen or nine een years old, was employed by said Brierly in the same work ; that after working some ten days Brierly was discharged from said work, and said Andrews reinstated, and upon Brierly being thus discharged the respondent ceased to have employment in the factory, as Andrews would not employ him, by reason of his having been in the service of Brierly, towards whom Andrews had unfriendly feelings, on account of his having supplanted him in said work, as above stated ; that said Andrews employed in the place formerly filled by the respondent a young man by the name of Flint, towards whom the respondent felt disaffected on account of his having got the respondent's place in work as aforesaid, and some unkind remarks and treatment of said Flint towards him, growing out of this condition of things.

The prosecuting attorney then offered to prove a confession averred to have been made by the respondent, that he set the said building on fire, and that he was hired to do so by Brierly, and that he made such confession to Greenbank, while the respondent was confined in jail upon a charge of having burned

said building; and that thereafterwards, upon the examination before a magistrate of Brierly, on the same day, upon a change of having burned said building, the respondent being sworn as a witness repeated the statements that he had previously made to Greenbank.

The respondent objected to the admission of this testimony, and gave evidence to the court in respect to said alleged confessions, and the circumstances under which they were made, in substance as follows:

The said Thomas Greenbank testified that he first had conversation with the respondent upon the subject the next morning after the fire, and that he then asked the respondent whether Brierly had ever intimated anything to him about burning the factory; that he replied he had not; that the witness then went to the town authorities and had respondent arrested; that they did not make out much against him, and let him go, and he was there two or three days, and proof seemed to be getting stronger, and the witness went to the town grand juror and the magistrate (Cozzens,) and told them respondent was going round leisurely and getting his board paid, and that, in witness' opinion, if they would try him again and put him in prison he would own up in two weeks; that they did so; that he (witness) told the grand juror that if respondent was put in prison, and away from folks, he would begin to consider, and if he knew anything, he would tell what he knew; that they tried respondent and brought him to Woodstock jail; (there was no evidence that respondent knew of what Greenbank thus said to the grand juror and justice;) that Brierly had not then been arrested; that the day respondent was brought to Woodstock, witness went to Boston and was gone four days; that when witness returned home, his wife told him that the respondent had written him a letter, wanting to see witness, and owning up considerable, and saying that if witness would come down he would tell more; that witness came to Woodstock the same night with Cozzens, and arrived there about nine o'clock in the evening; that the next morning witness had an interview with the respondent in the jail; that witness told him that he had come down as requested in his letter; that he had come down to see what he had to say, and witness then testified

substantially in these words : " I told him I wanted him to tell the truth just as it was ; that it would be better for him ; that we had got Brierly, and probably they would both be tried to-day, and it would be better to tell the truth just as it was, for if Brierly should get the start of you it may go hard with you ; you are a young man, and it would be better for you to tell it just as it is ; he said he would ; I asked him how it was ? I did not tell him I would help him all I could ; money and helping was not mentioned ; my meaning was that he should tell the truth just as it was ; I meant by ' if Brierly should get the start,' &c., that if Brierly set him on, and he should be brought up for trial again, Brierly might try to throw it on him and get clear himself. I held out no inducements ; I meant he should understand that if he had not much to do with it, and Brierly set him on, and he should tell the truth just as it was, it would be likely not to go so hard with him ; I did not tell him we should want him for a witness against Brierly ; I think before respondent was brought to Woodstock, while he was in the officer's hands, I told him if he knew anything he should tell it just as it was ; I do not recollect of anything said that it would be easier ; Andrews told him that it would be better for him to tell it right out ; he didn't own up at Gaysville ; I do not recollect of saying to him that it wouldn't go so hard with him if he would own up like a man; I may have appended such a remark ; like enough ; I don't recollect ; I had no other talk except at jail, and at Stockbridge as above ; I did not say to him if he would own up I would fix it so it would be easier for him ; before going to Boston nothing had been said about his writing."

It appeared that the respondent was taken from jail by Morey, the officer, and carried to Stockbridge, the same day that he made the alleged confession to Greenbank in the jail, and that on the same day on the examination of Brierly before the magistrate, he was sworn as a witness and testified substantially as he had before the same day told Greenbank ; and that the confession to Greenbank was made after all the conversation was had between Greenbank and the respondent as above stated.    Greenbank was the owner of the factory which had been burned.

Upon this testimony the respondent's counsel insisted upon the

State *v.* Walker.

objection taken to the testimony of the confession, either at jail or on the examination of Brierly.   But the court being of opinion from the evidence that said confessions were made voluntarily by the respondent, and not by reason of inducements held out to him, and that he sought the occasion of making them by writing to Mr. Greenbank in the manner stated by him, overruled the objection, and testimony was given of the confession of the respondent, both to Greenbank in the jail, and upon the examination of Brierly, that he, the respondent, set fire to the factory, and was hired to do so by said Brierly.   To all which the respondent excepted.

After a verdict of guilty, the respondent's counsel moved in arrest of judgment for the insufficiency of the indictment, which motion was, *pro forma,* and without hearing upon it, overruled by the court.   To which decision the respondent excepted.

The substance of the letter from the respondent to Greenbank was this :

The respondent made statements of certain declarations by Brierly, and of certain of his acts, which, if true, would tend to connect Brierly with the burning,—but said nothing, which tended to show, that the respondent participated in the burning ; and he closed by saying, that if Greenbank would come to Woodstock, he would tell him more.

At the beginning of the letter he, (the respondent,) expressed himself as having something that he wanted to say to Mr. Greenbank.

*Washburn & Marsh,* for the respondent.

*William Rounds,* states attorney for the prosecution.

PIERPOINT, J.   The motion in arrest, we think, was properly overruled.   The offence is charged in the language of the statute creating the offence and under which the indictment was found. This, as a general rule, is sufficient ; there are exceptions to the rule, but this case does not come within any of them.   The word manufactory has a clear and well defined meaning, and one well understood ; no one could doubt what was intended when the

indictment charged the burning of a manufactory. The meaning of the term is as well understood as that of house or barn.

The testimony introduced of the confession of the respondent, made to Greenbank, and his testimony before the examining magistrate, we think should have been excluded.

Since the case of the *State* v. *Phelps*, 11 Vt., the rule has been regarded as settled in this state "that a confession must never be received in evidence when the respondent has been influenced by any threat or promise," and in practice this rule has been rigidly adhered to, and its substantial correctness is not now questioned. But it is claimed that the evidence introduced in the court below, and which is spread upon the record, and under which the confessions were admitted, shows that no threat, promise, or inducement was made or held out to the respondent, that could have influenced him in making the confession ; but that he acted voluntarily. In looking at the whole testimony we are led to a different conclusion. It appears that Greenbank, who was injured by the fire, had once caused the respondent to be arrested, that on examination nothing was proved against him, and he was discharged. Within two or three days, Greenbank induced the authorities to arrest him again, under the belief that if he was confined in jail, he would " own up," to use his own expression. He was again arrested and bound up, and for want of bail, was sent to jail. After he was arrested and before his examination, Morey, the officer who held the warrant, and had him in charge, told him that if he knew anything about the fire, either that Brierly had anything to do with it, or set him on, the best thing he could do was to own up before his trial, and told him that if he wanted to say anything to him (the officer,) and would tell, he would help him if he could. Within a few days after he was imprisoned he sends for Greenbank by letter, saying substantially, that he would give him information as to Brierly. When Greenbank went to see him, he commenced by saying to him "that he wanted him to tell the truth just as it was ; that it would be better for him ; that they had got Brierly and probably they would both be tried that day, and that it would be better to tell the truth just as it was, for if Brierly should get the start of you, it may go hard with you. You are

a young man, and it would be better for you to tell it just as it is ; he said he would, etc." This is clearly holding out an inducement to make a disclosure of some kind. He is told that it will be better for him to do so. It is also intimated that if he does not, Brierly may, and that might injure him. How he was to be benefited in the one case or injured in the other, was not stated. This very uncertainty would not be without its effect on a young person situated as the respondent was ; he was suspected and' in jail and wanted help. When told that help lay in a particular direction, he was ready to take that direction without stopping to enquire or consider, how it was going to relieve him, or whether that would probably be the result. Hope induces him to seize the first straw that comes in his way.

But it is said these were only inducements to *tell the truth*, and had no tendency to induce a confession that was not true. This is true to the ear of the respondent, but it is not so to his understanding. He has already asserted his innocence and on that stands committed for trial. He is now told that it will be better for him to'tell the truth. Does he understand from that, or does the person making the statement intend him to understand, that it will do him any good to re-assert his innocence ? Certainly not. The person making the statement does it because he believes or suspects, he has not told the truth. And the prisoner understands, that whether he is innocent or not, it will in some way better his condition to tell a different story.

These inducements are rarely made to elicit what the party offering them supposes to be a falsehood ; the intention is good ; but this does not alter the effect. The prisoner acts upon them in view of the hope of benefit, that is held out, without reference to the motives that induced the offer, and under the circumstances is so likely to act upon them without much reference to the truth of his confession, that courts have uniformly refused to receive such confessions as evidence against him.

The representations that were made in this case, calculated to excite a hope of benefit, or fear of injury, were made by the person whose property had been destroyed, who was active in instituting and prosecuting the proceedings, and the one who the prisoner would most naturally suppose could benefit him in the

matter, and although he sustained no official relation to the proceedings, still, he was so far interested therein and connected therewith, that when the confession was made to him it came clearly within the rule excluding it. The relation of the same story on the stand as a witness, made the same day, must be regarded as standing on the same ground with the confession to Greenbank, it was in fact only carrying out the suggestions of Greenbank, and doing what he considered necessary to avail himself of the anticipated benefits, and must have been made under the same influences.

Again it is said the judgment of the county court that the confession was voluntary, and admitting it as evidence, are conclusive and cannot be revised by this court.

There is a class of cases when the testimony as to the promise, threat, or inducement is conflicting, and when the county court must pass upon the character and weight of the testimony upon each side, in order to determine whether the confession is voluntary or not, that their decision would be final. But in a case like the present, where there is no conflict in the testimony, or dispute about the facts, the decision of the county court admitting the testimony may be revised in this court It was in this manner that this question was brought before the supreme court in the case of the *State* v. *Phelps*, before referred to.

Judgment of the county court reversed, new trial granted and the case remanded.