## State of Vermont v. Carl G. Comes

[472 A.2d 1253]

No. 278-81

Present: Billings, C.J., Hill, Underwood, Peck and Gibson, JJ.

Opinion Filed January 27, 1984

*John J. Easton, Jr.*, Attorney General, *Robert W. Gagnon* and *Elizabeth Grant Rome*, Assistant Attorneys General, and *Stephen Craddock*, Law Clerk (On the Brief), Montpelier, for Plaintiff-Appellee.

*Andrew B. Crane*, Defender General, *William A. Nelson*, Appellate Defender, and *Nancy E. Kaufman*, Acting Appellate Defender, Montpelier, for Defendant-Appellant.

**Hill, J.** The defendant was convicted of breaking and entering in the nighttime, a violation of 13 V.S.A. § 1201. On appeal, he claims the trial court erred in denying his motion to suppress all statements he made to the police about the case.

The defendant was charged with breaking into a gas station by kicking open the door, and stealing ten cartons of cigarettes. The police detectives who investigated the scene found vibram-soled shoeprints on the gas station door. At the same time they were investigating this crime, they also received a report that a disturbance had occurred in a motel room next door to the gas station. They went to the motel room and interviewed one of the occupants, who told them the room's other occupant, the defendant, was at a nearby restaurant. The detectives found the defendant in the restaurant, identified themselves as police officers (they were wearing civilian clothing), and asked if they could speak with him. The defendant agreed, and he and the two officers walked outside and, since it was a cold afternoon in February, went into the police cruiser. The defendant sat in the back seat and the officers sat in front.

The officers stated that they were investigating the gas station burglary and the reported disturbance in the defendant's motel room. The detectives observed that the defendant was smoking Marlboro cigarettes, the same brand that was stolen from the gas station. One of the officers commented that the defendant's vibram-soled shoes were similar to the footprints found at the burglary scene. The defendant then told the officers he "was involved" in the burglary. The police immediately advised him of his rights as required by *Miranda* v. *Arizona*, 384 U.S. 436, 467–73 (1966). The defendant claimed he understood his *Miranda* rights, and then described his participation in the burglary. The defendant and the officers went back to the motel room, where the defendant produced the cigarette cartons he had hidden. They then went to the police station, where the defendant signed both a waiver of his *Miranda* rights and a written confession.

The defendant moved to suppress all statements made to the police, claiming a violation of his Fifth Amendment privi-

lege against self-incrimination and his Sixth Amendment right to counsel. At the suppression hearing, the defendant testified that, after he made his initial statement, the detectives told him it would "go easier on [him]" if he cooperated. The trial court refused to find whether the police had made this statement. The court then denied the motion, holding (1) with regard to the defendant's first admission in the police cruiser, that the defendant was not in custody while he was in the cruiser, so no *Miranda* warnings were necessary, and (2) with regard to the defendant's postwarning admissions, that the defendant knowingly and intelligently waived his *Miranda* rights. The defense waived a jury trial, and the court found the defendant guilty of breaking and entering.

I.

The defendant's first argument on appeal is that his initial statement in the police cruiser was the product of a custodial interrogation, so that *Miranda* warnings should have been given. In reply, the State argues that the defendant's attorney conceded, in his Proposed Findings of Fact on the Motion to Suppress, that the defendant was not in custody when he made his first admission in the cruiser. Therefore, the State argues that the defendant waived his right on appeal to claim that he was in custody when in the cruiser.

The State's argument is without merit. The State relies solely on a statement in the defendant's proposed findings that is ambiguous at best. Whether the defendant was in custody was one of the major issues of the suppression hearing. On this record, we are unable to agree with the State that the defendant waived a constitutional right.

The procedural safeguards of *Miranda* v. *Arizona*, *supra*, apply only if a defendant is in "custody." *Miranda* held that a person is in custody if his or her "freedom of action is curtailed in any significant way." *Miranda*, *supra*, 384 U.S. at 467. In *State* v. *Hohman*, 136 Vt. 341, 392 A.2d 935 (1978), this Court stated that a person is in custody if, in the totality of the circumstances, that person reasonably believes he or she is not free to leave. *Id.* at 349, 392 A.2d at 940. We cannot agree with the defendant's contention that the trial court failed to apply this test. In referring to the period prior to the

defendant's initial statement in the police cruiser, the trial court found in its findings of fact that "[w]hile seated in the police car, [the defendant] was not under arrest and was free to leave the vehicle at any time." The trial court was not required to state explicitly in its finding that it applied the *Hohman* test. The trial court's findings must stand if they are supported by credible evidence. *State* v. *Rocheleau*, 131 Vt. 563, 574, 313 A.2d 33, 41 (1973). Although there may be factual situations in which police questioning of a person in a cruiser may be custodial in nature, we conclude that the evidence in this case supports the trial court's finding of no custody.

■■ When approached in the restaurant, the defendant voluntarily agreed to talk with the police officers outside, where they would have more privacy. Since it was a cold day in February, it was logical for them to talk in the relative warmth of the police cruiser. Moreover, the defendant sat in the back seat and the officers sat in the front seat. The defendant was not handcuffed. Finally, only about three to five minutes elapsed between the time the officers approached the defendant in the restaurant and the time the defendant first admitted he was involved in the burglary. The trial court could properly have found that until the defendant made his admission, the officers were merely questioning the defendant and the defendant's freedom to leave was not restricted in any way. " '[P]olice officers are not required to administer *Miranda* warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the . . . questioned person is one whom the police suspect.' " *State* v. *Howe*, 136 Vt. 53, 59–60, 386 A.2d 1125, 1129 (1978) (quoting *Oregon* v. *Mathiason*, 429 U.S. 492, 495 (1977)). Because the trial court's finding that the defendant was not in custody is supported by credible evidence, we affirm the court's conclusion that the defendant's initial statement was admissible.

## II.

The defendant also claims the State failed to prove that the defendant knowingly, intelligently and voluntarily waived his Fifth and Sixth Amendment rights after he was given the *Miranda* warnings. Specifically, the defendant argues (1) that

he did not explicitly waive his rights and the Vermont Constitution should require an explicit waiver, and (2) that the police promise of leniency negated a valid waiver. We reverse and remand on the ground that the trial court erroneously failed to find whether the police actually made a promise of leniency to the defendant. Therefore, we do not reach the issue whether the Vermont Constitution requires an explicit waiver of Fifth and Sixth Amendment rights.

The defendant claims that, after he made his initial statement in the cruiser, the police told him they would "go a lot easier [on him]" if he made a full confession. The trial court made no finding on this issue: "The Court makes no finding as to whether in fact such a statement was made or not, in view of the inconsistencies in his recollection that the defendant exhibited while on the stand."

■■ For over a century this Court has held that confessions are inadmissible if the defendant was influenced by any threat or promise. *State* v. *Walker,* 34 Vt. 296, 301 (1861) (citing *State* v. *Phelps,* 11 Vt. 116, 121 (1839)). Similarly, the United States Supreme Court stated in *Miranda* v. *Arizona, supra,* that a waiver of the right to remain silent is involuntary and therefore invalid if the defendant was "threatened, tricked, or cajoled" into the waiver. 384 U.S. at 476. See also *Bram* v. *United States,* 168 U.S. 532, 542–43 (1897) (quoting 3 Russell On Crimes, at 478 (6th ed. 1896)) (to be admissible, a confession "must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence.").

■ Thus, whether the police promised leniency to the defendant in this case is material to the issue whether the defendant voluntarily and validly waived his rights. V.R.Cr.P. 47(c) requires the trial court to state its essential findings on the record when "factual issues are involved in determining a motion . . . ." Whether the defendant's waiver was valid was essential to determining whether the motion to suppress the statements made by the defendant following his initial admission should have been granted. The trial court's failure to make this finding precludes our review of the court's conclu-

sion and requires reversal on this point. *State* v. *Howe, supra*, 136 Vt. at 59, 386 A.2d at 1129.

*Reversed and remanded.*