### State of Vermont v. Hermin E. Austin

[586 A.2d 545]

No. 89-321

Present: Allen, C.J., Peck, Gibson and Dooley, JJ.

Opinion Filed May 25, 1990

Motion for Reargument Denied December 28, 1990

*Kevin R. Klamm,* Rutland County Deputy State's Attorney, Rutland, for Plaintiff-Appellant.

*Cortland Corsones* of *Corsones and Corsones,* Rutland, for Defendant-Appellee.

**Gibson, J.** The State of Vermont appeals from a trial court grant of defendant's motion to suppress statements made to the police about alleged charges of sexual abuse, following a polygraph test. We reverse and remand.

Defendant was arrested on September 12, 1988 on a charge of sexually assaulting a child, in violation of 13 V.S.A. § 3252(a)(3). Defendant filed a motion to suppress certain incriminating statements made to the police following a polygraph examination, asserting that he was not given his *Miranda* rights, that the statements were either involuntary or not made by him, and that, in any case, the statements resulted from coercion by the police.

At the hearing on the motion, the trial court found that Joseph Arduca, chief of the Brandon police department, interviewed defendant on May 23, 1988 in connection with the complaint of sexual abuse. The officer raised the question of a polygraph test for defendant, and the trial court found:

> The officer then inquired of the Defendant as to whether or not he would submit to a polygraph. He indicated to the Defendant that the victim would be taking a polygraph and based on that representation the Defendant agreed.

A polygraph examination was scheduled for July 20, 1988, and Chief Arduca brought defendant to the Rutland police barracks for the test. The trial court found that defendant had a serious hearing disability, which was not substantially improved by hearing aids, and that he required corrective glasses to see adequately. The court further found that "[t]he officers are not clear as to whether or not the Defendant had his hearing aid on at the time the polygraph was commenced and during the polygraph exam, nor are they sure whether or not he used his glasses." In addition, the officer in charge of the polygraph was not sure whether he had been aware that defendant had a hearing disability and was not sure whether he had spoken louder than usual to defendant to compensate for any hearing loss.

The trial court found that the officer in charge of the test read defendant his *Miranda* rights and had him sign a written waiver of those rights. The officer then proceeded to perform a pretest interview concerning the areas the test would cover. After the test was complete, Chief Arduca joined the testing officer and defendant, and a conversation ensued, during which defendant made statements that the alleged victim had "acted inappropriately, had pinched him, and had taken a bath in his home." Additional conversations followed, after which defendant executed a written statement, which was the subject of the

suppression motion. The court found that it was only in the post-test interview that defendant made the admissions contained in his written statement. The alleged victim was not asked to take a polygraph test after defendant made his admissions.

The trial court concluded that "[d]efendant was requested to submit to a polygraph and was given the inducement that the victim would do likewise." Noting that the alleged victim was never asked to take a polygraph test, the court concluded that the effect on defendant was prejudicial. Citing *State v. Comes*, 144 Vt. 103, 108, 472 A.2d 1253, 1256 (1984), the court concluded "that this is the very type of cajoling that the Supreme Court has expressly proscribed." The court also noted defendant's "severe loss of hearing, a disability that the examining officer is uncertain as to whether he was aware of at the time of the polygraph." Finally, the court commented on defendant's "anxiety about returning home to pick up his granddaughter upon her return from school." The court concluded that it was not persuaded that the State had sustained its burden of proof on voluntariness and granted the motion to suppress.

■ The State bears a heavy burden in demonstrating a knowing and intelligent waiver of *Miranda* rights. *State v. Stanislaw*, 153 Vt. 517, 529, 573 A.2d 286, 293 (1990); *State v. Malinowski*, 148 Vt. 517, 520, 536 A.2d 921, 923 (1987). "The trial court must determine the weight and sufficiency of the evidence and the credibility of witnesses." *Stanislaw*, 153 Vt. at 529, 573 A.2d at 293. In evaluating the State's claim of a *Miranda* waiver, "we will uphold trial court rulings that are not clearly erroneous and that are supported by credible evidence, even though inconsistencies or substantial evidence to the contrary may exist." *Id.*

■■ In cases like the present one, where doubt is raised about the capacity or physical ability of a defendant to understand the nature of the asserted waiver, it is especially important to inquire "into all the circumstances surrounding the interrogation." *Fare v. Michael C.*, 442 U.S. 707, 725 (1979). Those include defendant's "age, experience, education, background, and intelligence, and . . . the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights." *Id.* The court in

the present case fulfilled its mandate to examine into the physical and mental condition of defendant; its findings that he had a severe hearing impairment and required corrective glasses are supported by the evidence and will not be disturbed.

The hallmark of a voluntary confession is "the unfettered exercise of free will." *State v. Zehner*, 142 Vt. 251, 253, 453 A.2d 1126, 1127 (1982). "A law enforcement official may not use threats, improper influence, or physical or psychological pressure to extract a confession," and "'[t]he ultimate question is whether the pressure, in whatever form, was sufficient to cause the [defendant's] will to be overborne and his capacity for self-determination to be critically impaired.'" *Id.* at 253–54, 453 A.2d at 1127 (quoting *Ferguson v. Boyd*, 566 F.2d 873, 877 (4th Cir. 1977)).

The central finding on which the court based its conclusion—that defendant was cajoled into making a statement—is not supported by the evidence. Defendant executed the written statement immediately after taking the polygraph test, with full knowledge that the alleged victim had not yet taken a similar test. The State's undertaking to administer a test to the alleged victim may well have induced defendant to undergo the polygraph test,* but there is no evidence that it played any role whatever in persuading defendant to make the incriminating statement. When defendant signed the statement, he knew that the alleged victim's test had not yet occurred. Had the polygraph testing of the alleged victim been integral to defendant's case, then the mere fact of its nonperformance—whatever the reason—would lend weight to defendant's claim of prejudice. But defendant gave his statement immediately following his

---

* We grant defendant's contention here, arguendo, that he would not have taken the test but for the State's agreement to give a similar test to the alleged victim. But his own testimony is equivocal on the point:

Q. Can you say whether or not you would have given the statement to the police on July 20th or consented or agreed to have the test if you knew [the victim] was not going to take the test?

A. Well, I figured I wanted to clear my name, so I figured one way, I said, "Yeah, I should go down," but another way, I said, "Well, if she don't go down, I'm going to be just me alone." And when he told me she had to go, I volunteered to go—volunteered to go down. That was under the understanding she was going down to [sic].

own testing. Thus, the fact that he was told the alleged victim would also undergo testing is immaterial where fulfillment of the State's promise, however expeditiously it might have happened, would not have come soon enough to influence defendant's decision on whether or not to give the statement.

■ *State v. Comes* is not in point. In that case, the defendant asserted that he had been promised leniency in return for his confession, a consideration that could arguably have presented a strong inducement to cooperate. 144 Vt. at 108, 472 A.2d at 1256. In the instant case, defendant points to no promise on the part of the State that induced him to make his statement or worked to his prejudice at the time he agreed to give the statement.

Absent the element of improper inducement, the remaining findings do not support the trial court's conclusion that defendant's statement was given involuntarily. The court found that "[t]he officer in charge of the polygraph is not sure whether or not he was even aware that the Defendant had a hearing disability." But the officer administering the test testified only that he did not notice if defendant was wearing a hearing aid and glasses. He was not asked if he knew that defendant had a hearing impairment, and Chief Arduca, in fact, testified that he had informed the testing officer to that effect. The trial court found that the administering officer read defendant his *Miranda* rights and had him sign a written waiver. The court also found that the officer "indicated that the Defendant appeared to understand those rights and to waive them knowingly." At no point does the court find that defendant misheard or misunderstood any statement or question put to him during the interrogation. At most, the court in its conclusions stated that "[s]urely *if* the Defendant misheard, or failed to accurately perceive, the questions posed to him, the correspondent answers and polygraph results may have been largely or wholly invalid." (Emphasis added.) The absence of findings that defendant failed to hear or understand the information posed to him is consistent with the following testimony of defendant's daughter:

Q. Did he tell you what kind of questions the police had asked him at the lie detector place?

A. He told me different questions that he was asked, yes.

Q. The questions concerned whether he touched [the alleged victim] in a sexual way, didn't they?

A. Yes.

Q. So he knew—he told you about what they had asked him about?

A. Yes.

The State's evidence that the police gave defendant his *Miranda* warning and that defendant signed a waiver of his *Miranda* rights is at no point opposed by evidence, including defendant's own testimony that he could not hear or understand the *Miranda* warning, the conversation preceding the polygraph test, the questions posed during the test, or the conversations leading up to the written statement incriminating defendant. At most, defendant established that he had a hearing impairment, not that the impairment in any way intervened to taint the fruits of his interrogation. Finally, his passing reference to his need to end the interrogation to pick up a granddaughter from school was insufficient to establish that his appointment compelled him to confess to serious criminal charges, nor did the trial court accord independent weight to defendant's testimony on this point.

*Reversed and remanded.*