# State of Vermont v. Richard A. Roberts

[631 A.2d 835]

No. 91-472

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed June 18, 1993

*Jeffrey L. Amestoy*, Attorney General, and *David Tartter*, Assistant Attorney General, Montpelier, and *Theresa St. Helaire*, Bennington County Deputy State's Attorney, Bennington, for Plaintiff-Appellant.

*Bonnie Barnes*, Middlebury, for Defendant-Appellee.

**Allen, C.J.** In this interlocutory appeal, the State contests the trial court's suppression of defendant's inculpatory state-. ment, and defendant appeals the trial court's failure to suppress the fruits of a search of his residence, which he claims violated his rights under both the Fourth Amendment to the United States Constitution and Chapter I, Article 11 of the Vermont Constitution. We reverse the suppression of the statement and affirm the trial court's conclusion that the search did not violate defendant's constitutional rights.

The search was conducted at a house leased to a John Cercena. Defendant was not a named lessee, but resided in the house in exchange for services provided to Cercena. After the

rent was two months in arrears, the phone had been disconnected, and attempts to reach Cercena had failed, the agent for the lessor went to the house to investigate and found on the front door a notice that electrical service had been discontinued. She and a co-worker entered the house and discovered approximately fifteen cats. There were several large bags of cat food open on the floor, and the cats had been urinating and defecating in the house, creating a strong, offensive odor. A sliding glass door had been left partially open to allow the cats free access to the house. The agent returned to her office and again attempted to contact Cercena. She left a message on his son's answering machine at the son's residence in New York. After waiting several days and still not hearing from Cercena, she contacted local police because of her concern for the cats. A police officer accompanied her to the property to see whether the cats' condition required the attention of the animal control officer.

While attempting to locate the cats in the house, the officer observed marijuana plants drying in an upstairs bedroom. He also discovered a marijuana cultivation system in the cellar. The officer was in the house for a total of five or ten minutes during the initial search, and later obtained a search warrant based on his observations. Pursuant to the warrant, police seized marijuana and other evidence. Some of that evidence — mail, a birth certificate, and bottles of prescription medicine — linked defendant to the premises.

While on routine patrol the following day, a different officer recognized defendant operating a motor vehicle. The officer stopped the vehicle and arrested defendant for felony cultivation of marijuana. On the way to the station, defendant volunteered that he "[d]idn't have as big a hand in the operation as it appeared," or words to that effect. The officer told defendant to say nothing further until he was processed. During processing at the station, the officer explained to defendant that he had been arrested for a felony, that the officer would seek bail because defendant was from out-of-state, that another suspect, presumably Cercena, would be arrested and offered an opportunity to give a statement, and that if defendant made a statement the judge would probably consider it when determining the amount of bail. When asked whether he wished to make a

statement, defendant replied that he needed time to think about it. A short while later, he advised the officer that he did want to make a statement. After being informed of his rights as required by *Miranda v. Arizona*, 384 U.S. 436 (1966), defendant signed a waiver and gave an inculpatory statement, which, according to defendant, was intended to convey an appearance of cooperation to the judge who would set bail.

On appeal, the State argues that the trial court erred as a matter of law when it concluded on these facts that defendant's confession was not, considering the totality of the circumstances, the product of his free will. Defendant maintains that the officer should have advised him of his *Miranda* rights prior to engaging him in an extended conversation concerning, among other things, bail. On cross-appeal, defendant argues that the warrantless intrusion into the Cercena residence was not justified by either the consent of the lessor's agent or the officer's reliance on abandonment of the property, and that the fruits of the search must therefore be suppressed.

I.

■ In determining the voluntariness of a statement, a court must examine it "in the light of the 'totality of the circumstances.'" *State v. Beckley*, 157 Vt. 446, 448, 600 A.2d 294, 296 (1991) (quoting *State v. Stanislaw*, 153 Vt. 517, 532, 573 A.2d 286, 295 (1990)). We will uphold a trial court's ruling on voluntariness unless it is unsupported by the evidence or clearly erroneous. *Id.* at 450, 600 A.2d at 296. Here, the findings of the trial court are unchallenged, but those findings do not support the court's conclusion that the statement was not the product of defendant's free will.

■ We first address the officer's statement to defendant that his statement might result in reduced bail. It is well established law that "a confession is inadmissible as involuntary if 'obtained by any direct or implied promises, however slight.'" *Id.* at 448, 600 A.2d at 295 (quoting *Bram v. United States*, 168 U.S. 532, 542–43 (1897)). While the influence of a promise will render a confession inadmissible, *State v. Comes*, 144 Vt. 103, 108, 472 A.2d 1253, 1256 (1984), mere predictions regarding the value of cooperation are not sufficiently coercive to render a

subsequent confession involuntary. See, e.g., *United States v. Hart*, 619 F.2d 325, 326 (4th Cir. 1980) (officer's statement that cooperation could have an effect on bond reduction did not render confession involuntary); *United States v. Ferrara*, 377 F.2d 16, 18 (2d Cir. 1967) (absent prolonged interrogation or threats, statement to defendant that if he cooperated he would likely get out on reduced bail did not make confession involuntary); *State v. Adkison*, 338 S.E.2d 185, 187 (W. Va. 1985) (statement to defendant that if he cooperated he would probably get a lighter sentence, absent a promise to that effect, did not render confession involuntary).

One court characterized a prediction, as distinct from a promise, as being "about future events beyond the parties' control." *United States v. Fraction*, 795 F.2d 12, 15 (3d Cir. 1986). Thus, this Court held in *Beckley* that a law enforcement officer's offer to convey the fact of the defendant's cooperativeness to the state's attorney was insufficient to render his confession involuntary. 157 Vt. at 449, 600 A.2d at 296. Promises, on the other hand, convey the expectation of a benefit that the officer has, in the defendant's eyes, the power either to grant or withhold. *Hawkins v. Lynaugh*, 844 F.2d 1132, 1139 (5th Cir. 1988); cf. *Fillinger v. State*, 349 So. 2d 714, 715 (Fla. Dist. Ct. App. 1977) (confession suppressed because officer told defendant that he would take her cooperation into account in seeking to establish amount of bond).

■ The statement here under scrutiny — that the judge responsible for setting bail "would probably consider" defendant's statement — makes a prediction rather than a promise. The officer did not personally promise to provide any benefit to defendant, other than to convey the fact of defendant's cooperation to the judge and indicate that the judge might consider, when setting bail, that defendant had given a statement. Furthermore, nothing in the findings suggests that defendant perceived the officer as having the authority to directly provide him with any benefit. Because the officer made no promise, his statement regarding bail did not render the confession here involuntary.

■ Nor do the other statements by the officer justify suppression. Providing factual information regarding defendant's

situation does not render the confession involuntary. *United States v. Barfield*, 507 F.2d 53, 56 (5th Cir.), *cert. denied*, 421 U.S. 950 (1975). It is also permissible to advise a defendant of the nature of the charges against him. *State v. Tapia*, 767 P.2d 5, 9 (Ariz. 1988). Here, the officer told defendant that he would be seeking bail based on defendant's out-of-state residency and that another suspect would be arrested and given an opportunity to give a statement. These statements provided defendant with factual information and did not contribute any coercive force to the circumstances which confronted him when he decided to give a statement. We conclude that the statements made by the officer prior to defendant's decision to give a statement did not render his confession involuntary.

The parties argue on appeal whether defendant was subjected to custodial interrogation prior to being given *Miranda* warnings. The trial court concluded that the statement was involuntary and therefore did not reach the *Miranda* issues. We decline to address the parties' question because it has not been ruled upon by the trial court and is outside the scope of interlocutory review. Cf. V.R.A.P. 5(b) (allows appeal only from order or ruling).

## II.

Defendant argues that the warrantless entry by police into the Cercena residence violated his Fourth Amendment and Article 11 rights and that the fruits of the resulting search should be suppressed.

## A.

■■ The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." As a general rule, the amendment prohibits warrantless entry into a person's home, which is a clearly defined zone of privacy protected by the express terms of the amendment. *Payton v. New York*, 445 U.S. 573, 585 (1980). The prohibition does not apply, however, where an officer has received consent from either the owner, *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973), or a third party who has common authority over the premises.

*United States v. Matlock*, 415 U.S. 164, 171 (1974). Although a landlord generally lacks the common authority required to grant permission to search the premises of his tenant, *Chapman v. United States*, 365 U.S. 610, 616–17 (1961), once a tenant has abandoned the property, the tenant loses the protections provided by the Fourth Amendment. *Abel v. United States*, 362 U.S. 217, 241 (1960). Recently, the United States Supreme Court emphasized the reasonableness requirement of the amendment, holding that police conducting a search under an exception to the warrant requirement must be reasonable, though not always correct, in making the factual determinations necessary to establish the exception. *Illinois v. Rodriguez*, 497 U.S. 177, 186 (1990).

In *Rodriguez*, a former girlfriend of the defendant informed police that she lived in his apartment and had belongings there when, in fact, she did not have the common authority over the premises necessary for a valid third-party consent search. The search was held to be reasonable because the facts available to the officers would satisfy a person of reasonable caution that the girlfriend had authority over the premises.

Defendant argues that *Rodriguez* should not be extended to cases where there has been an apparent abandonment by a tenant and a subsequent consent by the landlord. This argument was made and rejected in *People v. Smith*, 561 N.E.2d 252, 260 (Ill. App. Ct. 1990).

> We see no principled distinction between a *reasonable but erroneous* belief by the police that a third party had "common authority" with the defendant over the premises in question, and a *reasonable but erroneous* belief by the police that a defendant had abandoned the premises in question. Thus, [the entry by the police], based upon the circumstances before them and their *reasonable* belief that defendant had abandoned that residence, would have been lawful even if the trial court were later to find that belief to have been erroneous.

(Emphasis in original.) We agree that, if the officer had a reasonable belief that the premises had been abandoned, his entry was lawful even if the premises had not been abandoned. The officer here learned from the lessor's agent that the rent was delinquent, the phone had been disconnected, the electricity

had been shut off, the agent believed that the tenant had "skipped out," the cats were running loose around the residence, and the tenant had not replied to messages left on his answering machine at a residence in another state. These facts lead to a reasonable inference that the premises had been abandoned and justify the entry by the officer.*

■ Defendant argues that the presence of personal belongings throughout the house made it unreasonable to assume that the premises had been abandoned. The court found, however, that the furnishings were of "very poor quality and of no value." After the initial entry, the officer was confronted with a house reeking of cat urine and in disarray. The agent described the house as destroyed with its furniture completely torn apart by the cats. These circumstances would confirm the belief that the premises had been abandoned. See *United States v. Wilson*, 472 F.2d 901, 903 (9th Cir. 1972) (no reasonable expectation of privacy for tenant who is two rental periods in arrears and leaves door open and apartment in disarray). Once inside the house, the officer came upon evidence of marijuana production. He then left the premises and took the additional measure of obtaining a warrant before conducting a more thorough search and seizing evidence. We conclude that the officer's actions were reasonable and did not violate defendant's Fourth Amendment rights.

### B.

■ Defendant contends that the warrantless entry violated Chapter I, Article 11 of the Vermont Constitution, which he correctly points out may offer protections beyond those provided by the Fourth Amendment. See *State v. Savva*, 159 Vt. 75, 84, 616 A.2d 774, 779 (1991). Article 11 provides "[t]hat the people have a right to hold themselves, their houses, papers, and pos-

---

* Under 9 V.S.A. § 4462(a) a tenant has abandoned a dwelling unit if:
　(1) there are circumstances which would lead a reasonable person to believe that the dwelling unit is no longer occupied as a full-time residence;
　(2) rent is not current; and
　(3) the landlord has made reasonable efforts to ascertain the tenant's intentions.

sessions, free from search or seizure; . . . ." The word "unreasonable," not appearing in the text, is "as implicit in Article Eleven as it is express in the Fourth Amendment." *State v. Record*, 150 Vt. 84, 85, 548 A.2d 422, 423 (1988). Although a person's home is a place where one can generally expect privacy, *State v. Blow*, 157 Vt. 513, 517, 602 A.2d 552, 555 (1991), the determination of the need for a warrant involves an objective inquiry: "whether a reasonable person should know that the occupant has sought to exclude the public." *State v. Kirchoff*, 156 Vt. 1, 10, 587 A.2d 988, 994 (1991).

 Here, the result is the same whether analyzed under the Fourth Amendment or Article 11. Given the condition of the premises and the numerous unanswered phone calls concerning the overdue rent, it was reasonable for the officer to conclude that the lessee of the property no longer sought to exclude the public. Given the circumstances, the police did not violate defendant's federal or state constitutional rights when entering the house without a warrant, and the trial court did not err in refusing to suppress fruits of the subsequent search.

*The trial court's ruling suppressing defendant's confession is reversed; its ruling denying suppression of evidence seized during the search of defendant's residence is affirmed. The cause is remanded.*