2005 VT 132

## State of Vermont v. Dennis P. Tribble

[892 A.2d 232]

No. 03-073

Present: **Dooley, Johnson, Skoglund and Reiber, JJ., and Allen, C.J. (Ret.),
Specially Assigned**

Opinion Filed December 30, 2005

*William H. Sorrell,* Attorney General, and *David Tartter,* Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Allison N. Fulcher* of *Martin & Associates,* Barre, for Defendant-Appellant.

¶ 1. **Skoglund, J.** Defendant challenges his conviction for first-degree murder following a jury trial, claiming that the trial court erred by (1) finding defendant competent to stand trial, (2) permitting defendant's attorney to withdraw before jury selection, (3) allowing the trial to proceed in the absence of defendant, and (4) granting the State's objections to the presentence investigation report. We reverse.

¶ 2. This case presents the unusual circumstance of a criminal trial of an unrepresented defendant who chose not to attend his trial — in other words, a trial with nobody sitting at the defense table to defend against the charges. The trial court, in the process of ultimately concluding that defendant validly surrendered his right to be present and to be represented by a court-appointed attorney, was forced to pick its way through a quagmire created by defendant's repeated insistence that he could not work with the attorneys appointed by the court to represent him. The court's task was complicated further by defendant's apparent struggle with mental health issues, both at the time of the offense and during the pendency of the action. As a result, the court took pains to evaluate and reevaluate defendant's competence to stand trial, and to supply defendant with three different sets of appointed attorneys — all established, experienced, and highly competent members of Vermont's bar. As the trial date approached, the court made clear to defendant that his failure or refusal to work with his third court-appointed attorney would leave him exactly two

options — proceed to trial on schedule with an attorney he retained on his own or proceed without an attorney.

¶ 3. Despite its exemplary diligence and patience, however, the trial court had one additional means at its disposal to test the validity of defendant's waiver of his right to counsel — conducting an on-the-record inquiry along the lines we described in *State v. Merrill*, 155 Vt. 422, 425-26, 584 A.2d 1129, 1131 (1990). Because the record does not reveal that such a colloquy between the court and defendant took place, we reverse the conviction.

¶ 4. Before we turn to the validity of defendant's waiver of counsel, in Section I we affirm the court's conclusion that defendant was competent to stand trial and/or waive any of his rights. The trial court ordered an initial evaluation and a follow-up when defendant sought to remove his third attorney, and held a competency hearing immediately prior to trial. The record that emerged from these proceedings supports the court's finding that defendant was competent. Next, in Section II, we explain our reversal of the court's ruling that defendant validly waived his right to counsel.[1]

### I. Defendant's Competency to Stand Trial

¶ 5. The district court addressed defendant's competency at multiple junctures between the arraignment in late September 2000 and the trial in September 2002. The issue first arose at a status conference on November 20, 2000, when the State requested that any mental health issues be dealt with early in the case. The court noted that there was a "serious issue" that defendant may have committed the crime "under some kind of delusions of a psychiatric nature," and agreed to revisit the issue of an evaluation. At the next status conference, on December 18, 2000, the court ordered an evaluation for competency and sanity.

¶ 6. Dr. Robert Linder conducted the evaluation and rendered a report dated January 29, 2001, concluding that "[a]n opinion that Dennis Tribble is *mentally competent to stand trial for the alleged offense* would find support." Dr. Linder continued:

> [Defendant] has a good understanding of the charge. He is able to assess the accuracy of that charge through his knowledge of the elements needed to show his guilt. He is aware that his attorneys are representing him and that the State's

---

[1] Given our holding on the waiver-of-counsel issue, we do not reach defendant's argument concerning his right to be present at trial or his sentencing arguments.

Attorney will prosecute him. He has some ideas about his possible defenses and realizes whom the state and his lawyers might call at trial to prove their cases. He is aware that the judge will make the decision about his fate. In a trial, he knows that a jury will stand in judgment and determine if he is guilty or not guilty. He was able to understand the plea bargaining process. He would be able to attend in court, to testify relevantly and to assist in cross-examination.

Neither party asked the court for a ruling on competency at the hearing on February 12, 2001, although the court and counsel briefly discussed the report in the context of a potential insanity defense.

¶ 7. Over a year later, after defendant requested that his third set of attorneys be dismissed, the court ordered a second competency evaluation during a July 2, 2002 telephone conference. The court wanted Dr. Linder to do a "last-minute check ... to see if there was anything new which had developed or come about that would cause me to conclude that [defendant] might not be competent to waive counsel." Dr. Linder performed the evaluation, and, in his July 25, 2002 report, Dr. Linder determined that "[w]hile [defendant] demonstrates paranoia regarding events that led up to the shooting, his appreciation of the court process remains intact and has not been incorporated in any similar persecutory ideas." Dr. Linder also recognized that because defendant's "personality is defined by a pervasive distrust and suspiciousness of others," he "may well" continue to experience difficulty working with new defense counsel. Notwithstanding the above, he concluded that defendant was mentally competent to stand trial. After receiving Dr. Linder's report, the court found defendant competent.

¶ 8. On September 16, 2002, one day before jury selection was slated to begin, the court held a hearing in response to a defense motion to determine competency. Dr. Albert Drukteinis, whom defense counsel had requested to perform an evaluation of defendant, opined that defendant was not competent to stand trial "because I don't think he's able to work with his attorney through the whole process of trial." Specifically, Dr. Drukteinis testified that defendant suffered from a delusional disorder that made it impossible for him to cooperate with his lawyers. He testified that defendant's failure to cooperate with his attorneys resulted not from his desire to be "obstructionistic," but "because he believes that the wrong path is being followed under his defense." On cross-examination, and in his written report, Dr. Drukteinis acknowledged that defendant understood the charge and

possible punishment, the role of the attorneys, judge, witnesses, and jury, the plea bargaining process, and his right not to be compelled to testify. Echoing Dr. Linder, he recognized that defendant had, at least "[i]n a token way," agreed to pursue an insanity defense. And finally, Dr. Drukteinis agreed that a competent professional psychiatrist could disagree with his diagnosis of a delusional disorder and therefore find defendant competent.

¶ 9. Dr. Linder testified for the State. Consistent with his two reports, he testified that defendant remained competent to stand trial. He acknowledged that defendant's paranoid personality disorder made it difficult for him to cooperate with his attorneys, but that this challenge was "not one in my view that can't be achieved." Dr. Linder also testified that defendant's unwillingness to pursue an insanity defense was not necessarily a product of his disorder because, in Dr. Linder's view, defendant did not have a strong insanity defense. The court ruled that defendant was competent to stand trial, finding Dr. Linder's analysis more persuasive than Dr. Drukteinis's.

¶ 10. We will not overturn a trial court's competency determination if it is supported by the court's findings, and if the findings in turn are supported by credible evidence and are not clearly erroneous. *State v. Marku*, 2004 VT 31, ¶ 19, 176 Vt. 607, 850 A.2d 993 (mem.). To be competent to stand trial, a defendant must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960); see also *Marku*, 2004 VT 31, ¶ 18 (noting that the *Dusky* test is the standard for determining competency to stand trial and to plead guilty). As explained below, the court's conclusion that defendant was competent is based on findings which are supported by credible evidence. Accordingly, we affirm the court's conclusion.

¶ 11. As described above, the court twice found defendant competent before the trial began: First, at the July 26, 2002 hearing, the court noted that it had reviewed the report and received it into evidence, and found defendant competent to stand trial. Notably, Dr. Linder's second report reinforced the conclusions in his January 2001 report, to which no party had objected. Then, at the September 16, 2002 competency hearing, after reviewing the reports and considering the testimony of Dr. Linder and Dr. Drukteinis, the court again ruled defendant was competent. Specifically, the court found that defendant understood the charge, "has retained his factual and rational understanding of the proceedings," and "would be able to attend in court to testify relevantly

and to assist in cross-examination." The court also found that defendant "has the ability to make decisions ... [and] has been making decisions all along. He can choose to cooperate or not cooperate as he sees fit in one aspect of his defense or the other." Acknowledging that defendant had difficulty collaborating with his court-appointed attorneys, the court found that defendant nonetheless had shown that he could change his position and tactics. Ultimately, the court concluded that "[i]gnoring good advice and persisting in a folly for a defense is not a functional level of incompetence to stand trial."

¶ 12. These findings are supported by the evidence the court amassed on this issue. In particular, Dr. Linder's two reports and his testimony at the September 16 hearing fully support the court's findings. Although Dr. Drukteinis's testimony and conclusions conflicted with Dr. Linder's, it was within the court's discretion to determine the credibility and the weight of the expert evidence before it. "[T]he credibility of witnesses, weight of the evidence and its persuasive effect are matters for the exclusive determination of the trier of fact. The ruling of the court must stand if supported by credible evidence, even though there may be inconsistencies or substantial evidence to the contrary." *Gilbert v. Davis*, 144 Vt. 459, 461, 479 A.2d 159, 160 (1984) (citation omitted). Therefore, because Dr. Linder's reports and testimony support the court's findings, which in turn support its decision that defendant was competent, we now affirm that decision.

## II. Waiver of Counsel

¶ 13. By the time his trial began, defendant had discarded three sets of experienced court-appointed defense attorneys. First, on September 27, 2000, the day of his arraignment, defendant requested appointment of counsel. The court granted the request, appointing attorneys Bradley Stetler and Ernest Allen to represent defendant. On September 19, 2001, with trial scheduled to begin in early November, attorneys Stetler and Allen notified the court that defendant wanted to fire them. Two days later, the court received a letter from defendant stating that he had fired his attorneys for not providing a vigorous and thorough defense. At a hearing on September 24, 2001, defendant expressed to the court his dissatisfaction with his attorneys, and the court gave him two weeks to submit in writing his reasons for dismissing his attorneys. The parties agreed that the November trial date was no longer realistic.

¶ 14. On October 2, 2001, defendant filed a letter with the court stating that he had decided to keep his attorneys, and reiterated that decision at a suppression hearing on October 18, 2001. The November 5, 2001 trial date was reinstated. Less than a week later, on October 24, 2001, defendant notified the court by letter that he again wished to fire his attorneys. The court held a hearing on October 31 and agreed to discharge attorneys Stetler and Allen, warning defendant that "if further dissatisfaction develops with that [new] lawyer, then most probably you could end up having to defend this case yourself."

¶ 15. Next, attorney John Pacht was appointed to represent defendant. In April 2002, defendant wrote to the court expressing his dissatisfaction with attorney Pacht. The case was reassigned to attorney David Sleigh.

¶ 16. On May 29, 2002, defendant filed a letter with the court requesting that Mr. Sleigh be dismissed and stating that "I will not ask for nor will I accept another lawyer from the Defender General. I will find one elsewhere." The court held a hearing on July 2, which defendant chose not to attend, to address defendant's request, and ordered defendant to be reevaluated by Dr. Linder, to make sure there was no change in defendant's competency to stand trial and to waive counsel since Dr. Linder's first evaluation. The court also scheduled a July 26 hearing to assess defendant's motion to dismiss his counsel in light of Dr. Linder's second evaluation.

¶ 17. Defendant then moved to continue the July 26 hearing. On July 24, in the course of denying the continuance, the court observed that defendant "indicated quite clearly in writing that he doesn't want to be represented," and concluded that defendant was prepared to proceed "and tell his story the way he wants to tell his story." The next day, July 25, attorney Sleigh's firm, Sleigh & Williams, filed a motion to withdraw, citing defendant's unwillingness to speak to attorney Sleigh or his partner, attorney David Williams, let alone assist them in preparing for trial.

¶ 18. A day later, at the July 26 hearing, as noted above, the court again found defendant competent to stand trial. The court also kept Sleigh & Williams in the case as standby counsel. In summarizing the sequence of events that led to the motions pending before it, the court noted that defendant's request to dismiss counsel "basically indicat[ed] that he's either going to defend himself —." Before the court could finish that thought, defendant interjected: "No, that isn't the case at all your Honor." He then gave a lengthy description of his dissatisfaction with his attorneys, concluding that "[t]hey're not my attorneys

anymore and I have no intention of defending myself. I'll get a lawyer, but I don't want a public defender because this is the third one in a row that's refused to do anything to help me." After the court informed defendant that the case would go to trial on September 14, and that he could "find any lawyer you want, but you'll pay for it," defendant responded "I'm not asking the State to provide me with a lawyer." Defendant protested the September trial date, and the court made it clear to defendant that if he chose not to remain with his court-appointed counsel, he had only two options: go to trial in September with counsel he retained on his own or represent himself at trial.

¶ 19. Defense counsel then moved this Court for extraordinary relief, requesting, inter alia, that this Court grant counsel's motion to withdraw. We denied the petition, holding that "counsel remains obligated to provide full legal representation for defendant unless and until defendant retains private counsel, or defendant successfully moves to proceed pro se, in which case the court and counsel may revisit the issue of standby counsel." *State v. Tribble*, No. 2002-352, slip op. at 2 (Vt. Aug. 15, 2002) (unreported mem.). Attorney Sleigh continued to represent defendant and prepare the case for trial.

¶ 20. At the September 16 competency hearing described above, attorney Sleigh informed the court that if defendant persisted in refusing to present an insanity defense, he would again move to withdraw. The court directed attorney Sleigh to remain at trial, even if it was against his will. Defendant did not appear at the hearing, and advised the court, via the court officer, that he had chosen not to participate.

¶ 21. The next morning, September 17, defendant submitted a letter to the court stating that attorney Sleigh was no longer his lawyer and requesting that the court dismiss attorney Sleigh, stay the proceedings, and appoint a new attorney, despite his earlier assertions at the July 26 hearing that he did not want another court-appointed lawyer. In court that morning, attorney Sleigh renewed his motion to withdraw, explaining that after the competency hearing the previous day, he had gone to defendant's holding cell to go over what had transpired at the hearing. When attorney Sleigh informed defendant that he would conduct jury voir dire focused on the jurors' receptivity to an insanity defense, defendant became "enraged" and said he wanted nothing to do with attorney Sleigh or the trial. Attorney Sleigh tried to contact defendant later that day and again before court on the morning of the seventeenth, but defendant refused to speak with him both times. As a result, attorney Sleigh stated that he was faced with an

impossible choice: on the one hand, he could not present an insanity defense over defendant's objection under *State v. Bean*, 171 Vt. 290, 762 A.2d 1259 (2000); on the other hand, he believed the insanity defense was the only nonfrivolous defense available.

¶ 22. The court granted attorney Sleigh's motion to withdraw, recognizing that, "given [defendant's] very clearly stated position in the motion which was filed today, and his boycott, if you will, of these proceedings," it would serve no purpose to require attorney Sleigh to remain, even as standby counsel. The court further explained that defendant

> has blown through some of the best criminal defense lawyers in the state that I worked very hard to get assigned for him. He's repeatedly indicated that he was going to have private counsel enter the case, which has not occurred. And as far as I'm concerned, this representation issue has become nothing more than a delaying tactic and we won't be putting the case off anymore.

The court then made explicit its determination that defendant was

> sufficiently competent to waive counsel, just as I made a determination that he was sufficiently competent to stand trial. He unquestionably, as we know, has a mental health issue, but he understands what the business of counsel is all about. And he is sufficiently lucid and articulate about that subject and sufficiently aware of potential consequences of being unrepresented, and I'm going to determine that he's competent to waive counsel in this case and proceed pro se. And he has elected not to participate, which is his business.

¶ 23. Defendant argues that he did not make a knowing, voluntary waiver. In essence, he makes three points. First, he contends that the trial court failed to determine whether he was knowingly and voluntarily waiving his right to counsel, as required by prior rulings of this Court. Second, he argues that he consistently stated that he did not want to represent himself and that he did want an attorney to help him, so that a valid waiver cannot be inferred from his conduct. Finally, he asserts that his due process rights were violated because the trial court

allowed attorney Sleigh to leave the case in defendant's absence, without notice and an opportunity to be heard.[2]

¶ 24. As explained below, we hold that the court's decision to allow the trial to proceed without defense counsel was error for two reasons. First, the absence in this case of an explicit, on-the-record colloquy, in which the court ascertained whether defendant had validly waived counsel and explained to defendant the potential pitfalls of proceeding without representation, precludes finding a valid waiver of counsel. In effect, the court found a waiver based on defendant's reported conduct, a conclusion we are unwilling to accept where, as here, that conduct did not unequivocally indicate a desire to proceed without counsel. Second, the court's decision allowed counsel's assessment of defendant's case — namely, that an insanity defense was the only viable defense — to trump both defendant's right to be represented and his right, established in *Bean*, to decide whether to defend on insanity. Defendant's assertion of the latter right cannot be allowed to circle back on him as grounds for finding a waiver of the former.

### A.

¶ 25. An indigent defendant has a constitutional right to be represented by counsel. *Gideon v. Wainwright*, 372 U.S. 335, 344 (1963). That right is codified in Vermont Rule of Criminal Procedure 44(a): "Every defendant charged with a serious crime as defined in 13 V.S.A. § 5201(4) who is unable to obtain counsel shall be entitled to have counsel assigned to represent him at every stage of the proceedings . . . unless he waives such appointment." A defendant can waive his or her right to counsel "if the court, at the time of or after waiver, finds of record that [the defendant] has acted with full awareness of his rights and of the consequences of a waiver and if the waiver is otherwise according to law." 13 V.S.A. § 5237.

¶ 26. In order to assess the validity of a waiver of counsel, the trial court must determine whether the defendant made the waiver knowingly and voluntarily. *State v. Pollard*, 163 Vt. 199, 206, 657 A.2d 185, 190 (1995). In general, the trial court must "conduct an inquiry into

---

[2] Preliminarily, we note that the *Dusky* test for competency to stand trial also applies in determining whether a defendant is competent to waive counsel because "there is no reason to believe that the decision to waive counsel requires an appreciably higher level of mental functioning than the decision to waive other constitutional rights." *Godinez v. Moran*, 509 U.S. 389, 399 (1993).

the nature of [the] defendant's understanding of the rights he is waiving." *State v. Stenson*, 169 Vt. 590, 592, 738 A.2d 567, 571 (1999) (mem.). The "better practice" in this context is for the trial court to inquire on the record "into the defendant's experience, motives, and understanding of what he is undertaking," and to explain "the available options to protect [defendant's] rights to counsel, the full nature of the charges against him, the range of allowable punishment, and the consequences of proceeding without the aid of an attorney." *State v. Merrill*, 155 Vt. at 425-26, 584 A.2d at 1131. The court should also "provide a clear explanation of the adverse consequences of pro se representation . . . so that a reviewing court may determine that the defendant knowingly accepted the risk." *Id.* at 425, 584 A.2d at 1131 (citation omitted).

¶ 27. In reviewing whether a defendant made a valid waiver, we consider the totality of the circumstances. *Stenson*, 169 Vt. at 592, 738 A.2d at 571. As we acknowledged in *Merrill*, "specific circumstances, such as a defendant's past experience in representing himself, or pretrial attempts to obtain or to fire counsel, or even his conduct at trial, may reveal that in-depth inquiry or extensive advice is not necessary in that particular case." 155 Vt. at 426, 584 A.2d at 1131-32; see also *State v. O'Connell*, 147 Vt. 60, 65, 510 A.2d 167, 170 (1986) (recognizing that "[t]he specific circumstances of a particular case . . . may excuse a trial court's failure to inquire into a defendant's decision to proceed pro se."). But it is also clear that "a court may not conclude from silence or other equivocal conduct that a defendant has waived his right to counsel." *State v. Bradley*, 164 Vt. 346, 350, 670 A.2d 811, 814 (1995); see also *Merrill*, 155 Vt. at 425, 584 A.2d at 1131 (recognizing that waiver may not be "presumed from a silent record"). Thus, a defendant's conduct could be the kind of "specific circumstances" that would obviate the need for a *Merrill* inquiry in finding a satisfactory waiver of counsel only if it unequivocally indicated an intent to waive counsel.

¶ 28. The record in the instant case does not reveal unequivocal conduct by defendant concerning the issue of representation. At the July 26, 2002 hearing, defendant stated "that isn't the case at all" when the court suggested that he intended to defend himself. In August 2002, we noted that defendant "disclaimed any interest in representing himself," in our denial of defense counsel's petition for extraordinary relief. *Tribble*, No. 2002-352, slip op. at 2. And, most importantly, on the morning trial was scheduled to begin, defendant submitted a letter

requesting that, among other things, the court appoint him a new attorney. In light of the questions surrounding defendant's competency and mental health, which persisted at the time of trial, and in spite of the considerable, and admirable, efforts the court made to accommodate defendant during the pendency of the case, we are forced to conclude that the court did not have before it a record of unequivocal conduct indicating a waiver of counsel by defendant.

¶ 29. Accordingly, the court was obliged to conduct a *Merrill* inquiry before accepting defendant's waiver of counsel. Because defendant refused to attend court on the days of his trial, there was no on-the-record colloquy between defendant and the court concerning the issues identified in *Merrill*. For this reason, this case contrasts with the federal cases cited by the State, where the defendant appeared in court each time he rejected his appointed attorney. See, e.g., *United States v. Fazzini*, 871 F.2d 635, 641-42 (7th Cir. 1989) (affirming conviction where court found that defendant waived right to counsel and required defendant to proceed pro se after defendant rejected fourth appointed attorney); *United States v. Moore*, 706 F.2d 538, 539-40 (5th Cir. 1983) (affirming conviction where trial court excused the fourth attorney rejected by defendant and required defendant to proceed pro se, over defendant's continued demand for new counsel). Thus, the courts in those cases were not confronted with assessing the validity of the waiver in the defendant's absence, as was the trial court here.

¶ 30. Moreover, the court's efforts to communicate with defendant through personnel at the correctional center were not a proper substitute for a *Merrill* inquiry. Although the court's exchange on the record with Scott Shafer, the administrative supervisor at the correctional facility, reflects that Mr. Shafer mentioned to defendant his understanding that defendant was proceeding pro se, the main focus of those communications was on defendant's decision not to attend the trial. This indirect, sparse discussion of the issue cannot replace the colloquy envisioned in *Merrill*. As a result, we cannot now conclude that defendant "knowingly accepted the risk" of proceeding without counsel, *Merrill*, 155 Vt. at 425, 584 A.2d at 1131, particularly given defendant's acknowledged mental health issues, which, as noted by Drs. Drukteinis and Linder, did relate in part to his ability to interact with his attorneys. Accordingly, we must reverse the trial court's decision that defendant validly waived his right to counsel, and, with it, defendant's conviction.

## B.

¶ 31. We next address the conflict that arose in this case between defendant's right not to pursue an insanity defense and counsel's position that the insanity defense was the only option. First, we briefly summarize our decision in *Bean*, because it provided the backdrop for the situation that arose in the instant case. In *Bean*, we held that "the decision whether to assert an insanity defense lies with defendant, and not with defense counsel." 171 Vt. at 302, 762 A.2d at 1267. We based that holding on our recognition that Vermont's procedure for raising an insanity defense is equivalent to a plea of not guilty by reason of insanity, and that the defendant controls the decision of what plea to enter. *Id.* at 300-01, 762 A.2d at 1266. As further support, we noted that the defendant alone should decide whether to face imprisonment or commitment in a mental institution, that an insanity defense could be "so inconsistent with a defense on the merits . . . as to make the latter impossible," and that "the vast majority of courts" confronting this issue have held that the decision lies with the defendant, and not counsel. *Id.* at 301, 762 A.2d at 1267.

¶ 32. Here, the issue came to a head before trial began on the morning of September 17, 2002, when defense counsel advised the court that he would represent defendant only by putting on an insanity defense. In counsel's view, his continued representation of defendant without presenting an insanity defense "would be ineffective assistance . . . an impossible cross of allegiances and loyalty and . . . I would refuse to participate under those circumstances." Meanwhile, defendant had made clear in a letter to the court that morning, as well as in a heated exchange with counsel the day before, that he wanted nothing to do with an insanity defense. After further discussion with defense counsel and the prosecutor, the court resolved the conflict by allowing defense counsel to withdraw and requiring defendant to proceed without an attorney.

¶ 33. In so doing, the court effectively ruled that defendant had to proceed pro se because his decision not to pursue an insanity defense happened to clash with his counsel's professional judgment. That approach left defendant with only two options: be represented and defend on insanity, or forego both an attorney and the insanity defense — an untenable choice in light of his coordinate rights to be represented *and*, as guaranteed by *Bean*, to decide whether to present an insanity defense. It also improperly deprived defendant of a critical third option — proceeding to trial with an attorney and a defense other than insanity. In the absence of a valid waiver of defendant's right to

counsel, the court could not foreclose this third possibility. By so limiting defendant's array of options, the court in effect treated defendant's decision not to allow an insanity defense as a waiver of his right to counsel. However, defendant's choice to exercise his right to decline an insanity defense cannot be transformed into a voluntary relinquishment of his constitutional right to counsel, especially because he alone has the authority to exercise both and because, as explained above, defendant did not validly waive his right to counsel.

¶ 34. Contrary to the view suggested by trial counsel in this case, nothing in our Rules of Professional Conduct required defendant's attorney to present the best defense of which he was aware, over defendant's objection. Rather, the rules obligate an attorney in general to "abide by a client's decisions concerning the objectives of representation," and, more specifically, they require that "[i]n a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered." V.R.P.C. 1.2(a). The decision to raise an insanity defense is in effect a decision about entering a plea, which lies with the defendant. *Bean*, 171 Vt. at 301-02, 762 A.2d 1266-67. Thus, counsel's duty here was to abide by defendant's decision to forego the insanity defense. As a result of this duty, counsel may have been required to pursue a defense he believed was inadvisable or that he thought would not succeed, but that neither lessened counsel's duty to abide by defendant's decision, nor eliminated counsel's potential utility as an advocate at trial. As Justice White explained in his concurring opinion in *United States v. Wade*, defense counsel can "put the State to its proof, to put the State's case in the worst possible light, regardless of what he thinks or knows to be the truth." 388 U.S. 218, 258 (1967).

¶ 35. Moreover, we are not aware of a case in which a court held that an attorney was bound to present an insanity defense over a defendant's objection. To the contrary, courts have "affirmatively indicated" that an attorney is not required to present the defense over his client's objection. A. Singer, *The Imposition of the Insanity Defense on an Unwilling Defendant*, 41 Ohio St. L.J. 637, 666 (1980). Thus, we find no support for the proposition that an attorney is compelled, ethically or otherwise, to present an insanity defense when, in his professional judgment, it is a defendant's best, or only meritorious, defense. Rather, we conclude that an attorney's assessment of the relative merits of various defenses cannot be allowed to override a defendant's right to decide whether to mount an insanity de-

fense or to deprive a defendant of his right to counsel, absent an otherwise-valid waiver of that right.[3]

¶ 36. In sum, the unorthodox sequence of events leading up to trial ultimately forced defendant to choose between his right to counsel and his right to control the use of the insanity defense. We conclude that putting defendant to that choice here was impermissible. In light of our decision, we need not address defendant's arguments concerning his absence from the trial or his sentencing.

*Reversed and remanded for further proceedings consistent with this decision. The district court's opinion and order of October 24, 2000 granting the State's motion to hold defendant without bail is reinstated, and defendant shall remain held without bail pending further order of the district court.*

--------

[3] We acknowledge that, under certain circumstances, it may be better to allow some lawyers to withdraw if they have significant differences with their clients, and our decision does not prevent a trial court from replacing an attorney in such a situation.