*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2014-333

AUGUST TERM, 2015

| | | |
|---|---|---|
| State of Vermont | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Essex Unit, |
| v. | } | Criminal Division |
| | } | |
| | } | |
| Brien Daignault | } | DOCKET NO. 45-4-12 Excr |

Trial Judge: Robert R. Bent

In the above-entitled cause, the Clerk will enter:

Defendant appeals his conviction by jury of unlawful trespass, arguing that the criminal division of the superior court failed to ensure that he knowingly, voluntarily, and intelligently waived his right to counsel. We affirm.

In April 2012, defendant was charged with unlawful trespass based on an incident in which he entered his tenants' residence without license or privilege to do so and removed their possessions. On April 23, 2012, the day of defendant's scheduled arraignment, Attorney Deborah Bucknam entered an appearance and moved for a continuance. The motion was granted, and the arraignment was scheduled for May 4, 2012. On June 27, 2012, following the arraignment, Attorney Bucknam filed a motion to withdraw. Two days later, Attorney David Sleigh entered an appearance in the case. On September 17, 2012, defendant requested a public defender. The request was granted, and he was ordered to pay $505.85. Nonetheless, Attorney Sleigh, who was not an assigned public defender, filed a motion to dismiss the charge on October 16, 2012. Three days later, defendant withdrew his request for a public defender, and the payment order was rescinded. On January 2, 2013, following a December 13 hearing, the trial court denied defendant's motion to dismiss.

After an unexplained delay, a pretrial conference was scheduled for December 27, 2013. At the pretrial conference on that date, Attorney Sleigh informed the court that the case was ready for trial but that he was filing a motion to withdraw because defendant wished to represent himself. The court inquired as to whether defendant had ever represented himself, and Attorney Sleigh responded that defendant had represented himself in a previous landlord-tenant matter. In response to the court's inquiry, defendant acknowledged that that case had not involved a jury.

The court then informed defendant that a jury trial would be more complicated, involving many rules on what evidence could or could not be heard by the jury. The court explained that there are "a lot of reasons why you want a lawyer," including interpretation of the law, and warned defendant that "you'd be at a disadvantage if you represent yourself." Defendant responded that the case should have been dismissed and then stated that if the case went to trial, "I got to spend time and money, that I feel at his point I should represent myself." Defendant

then stated: "I mean, not that I want to.  You know, I've hired Sleigh here because I thought this case would be dismissed; there's certainly enough evidence here to do that."

When the court explained that the case would not be dismissed before trial, defendant reiterated that he had "already spent enough time and money on this."  The court then informed defendant that the charged offense was a felony subjecting him, if convicted, to a maximum of three years in jail and a $2000 fine.  The court warned defendant that a conviction could have several negative ramifications in his life, including foreclosure of employment opportunities or the possibility of benefiting from government programs or grants.  Defendant responded that he had a chance to accept a plea bargain but that there was "no way" that he was going to accept it on the conditions offered.  The court then asked defendant and Attorney Sleigh to meet in private once again, in light of the warnings it had provided, to determine whether defendant wanted to proceed pro se.  The transcript ends at that point, but that same day, defendant signed a written waiver of counsel indicating in bold that he did not wish to be represented by an attorney and acknowledging that he was entitled to be represented by counsel and that the court would consider assigning counsel if he could not afford to hire an attorney at his own expense.

On January 9, 2014, at the start of the jury draw, the trial court asked defendant if he wished to represent himself.  Defendant responded that he did.  The court then expressed its concern that it had not fully apprised defendant at the December 27 pretrial conference of his potential entitlement to representation by an attorney at state expense because it had not been aware that defendant had been granted a public defender in the past.  The court stated that it wanted to make sure that defendant still desired to represent himself and not have the court consider assigning him a public defender.  Defendant responded that he had originally qualified for a public defender and was told it would be Attorney Willey, but Attorney Willey told him "that it was opening a can of worms and he didn't want to represent me."  The court reiterated that it would consider assigning him a public defender if that's what he wanted to do.  Defendant stated that he "declined" representation by Attorney Willey "because of a conflict of interest, you know, when he told me one thing and then gave me a phone call later on and told me another thing."  The court responded: "Well, I'm not hearing any conflict of interest.  I'm not concluding there's a conflict of interest.  And if I assign a public defender, that firm is who would be handling the matter, unless there truly is a conflict."  After defendant again stated he declined a public defender after he was told it would be Attorney Willey, the court stated that it wanted "to make sure that if you were representing yourself, you're representing yourself because that's what you want to do.  If you want me to assign an attorney, I will consider doing that, because you did qualify; you made an initial application."  The court further stated that it would assign him Attorney Willhoit of the firm of Willey & Power, noting that Attorney Willhoit was at the court and handled Essex cases.  While recognizing that defendant did not appear to like how his previous attorneys had advised him on his case, the court encouraged defendant to meet with Attorney Willhoit.  Finally, before getting into defendant's then-current financial circumstances, the court asked defendant "do you want me to consider assigning you a public defender, or do you want to represent yourself."  Defendant responded: "I feel at this point, your Honor, I—like I said, I'll remain representing myself."

Jury selection then proceeded, and the jury trial took place the following day.  During his closing argument following the presentation of evidence, defendant explained to the jury that he had felt intimidated by one of the lawyers he had previously hired and that he decided to take on the case himself when his lawyers could not get the case dismissed.  The jury convicted

2

defendant of the charge, and he was sentenced to one-to-three years, all suspended except seventy-four days to serve, with fourteen in jail and sixty on pre-approved work-crew furlough.

On appeal, defendant argues that the trial court's colloquy with him was insufficient to establish that he knowingly, voluntarily, and intelligently waived his right to counsel. According to defendant, the record demonstrates that he equivocated on whether he wanted assigned counsel but ultimately declined counsel because of a perceived conflict of interest. He contends that the court failed to inquire deeply enough into either his motivations for wanting to represent himself or his understanding of what that would entail.

"Both the Vermont and United States Constitutions provide an accused a right to counsel," but "[t]he right can be waived if the waiver is made knowingly and intelligently." State v. Bean, 163 Vt. 457, 460-61 (1995); see also 13 V.S.A. § 5234(a) (requiring court to inform defendants of right to be represented by attorney and at state expense for needy persons, and to inform public defender of unrepresented defendants who have not knowingly, voluntarily, and intelligently waived those rights); 13 V.S.A. § 5237 (stating that person appropriately informed of rights under § 5234 may waive those rights if court finds that person "has acted with full awareness of his rights and of the consequences of a waiver . . . . consider[ing] such factors as the person's age, education, and familiarity with the English language, and the complexity of the crime involved"). Waiver of the right to counsel will not be inferred from doubtful conduct or a silent record, and courts will indulge every reasonable presumption against waiver. Bean, 163 Vt. at 461; see State v. Brown, 2005 VT 104, ¶ 19, 179 Vt. 22. Accordingly, "the best practice is for the trial court to conduct sufficient inquiry into the defendant's experience, motives, and understanding of what he is undertaking to determine the quality of his purported waiver, and then to provide a clear explanation of the adverse consequences of pro se representation." Brown, 2005 VT 104, ¶ 19 (quotation omitted). Nevertheless, "we require no sacrosanct litany for warning defendants against waiving the right to counsel[,] as the appropriate inquiry is what the defendant understood—not what the court said." State v. van Aelstyn, 2007 VT 6, ¶ 13, 181 Vt. 274 (quotations omitted). Ultimately, we consider the totality of the circumstances in determining whether there was a valid waiver. State v. Tribble, 2005 VT 132, ¶ 27; see van Aelstyn, 2007 VT 6, ¶ 13 ("We have found knowing and intelligent waivers when there was little or none of the suggested colloquy but circumstances nevertheless indicated that the waiver was knowing and intelligent.").

The circumstances of this case demonstrate a valid waiver. At the December 27 pretrial conference, defendant was represented by counsel, who stated that the case was ready for trial and who acknowledged defendant's desire to proceed pro se. Defendant's attorney also informed the court that defendant had represented himself in a prior action. The court warned defendant of the potential pitfalls of representing himself in a criminal trial before a jury, and insisted that he confer with his attorney once more before deciding to go to trial without an attorney. Nevertheless, that same day, defendant signed a written waiver form indicating that he did not wish to be represented by an attorney, even though he understood that he had a right to such representation and that the court would consider hiring a public defender if could not afford an attorney. Later, at the January 9 jury draw, the court stated that it had become aware that defendant had been granted a public defender at one point and that it wanted to make sure that defendant understood that a public defender could still be assigned if he met the financial criteria. Defendant clearly stated his intent to proceed with trial pro se, even after the court emphasized that it would still consider appointing a public defender. Defendant indicated a potential conflict of interest regarding an attorney in the firm that would be representing him if

he were appointed a public defender, but the court stated that an attorney in that firm would be appointed "unless there is truly a conflict." Nevertheless, defendant stated unequivocally that he wanted to proceed pro se. Although at the December 27 pretrial hearing defendant mentioned "time and money" in discussing his decision to proceed pro se, at the January 9 jury draw the court repeatedly impressed upon defendant that he could still obtain a public defender if he met the criteria. Defendant nonetheless elected to proceed pro se, indicating that he was not content with the results achieved by his attorneys thus far. Under these circumstances, we find a valid waiver of defendant's right to counsel, including counsel at state expense if he met the financial criteria. Cf. Brown, 2005 VT 104, ¶ 22 (stating that trial court did not need to ask defendant specifically about his motives for proceeding pro se because defendant indicated his dissatisfaction with attorneys who were part of legal system).

    Affirmed.


                        BY THE COURT:


                        _____
                        John A. Dooley, Associate Justice


                        _____
                        Marilyn S. Skoglund, Associate Justice


                        _____
                        Beth Robinson, Associate Justice