## State of Vermont v. Bradley D. Merrill

[584 A.2d 1129]

No. 86-421

Present: Allen, C.J., Peck, Dooley and Mahady, JJ., and Barney, C.J. (Ret.), Specially Assigned

Opinion Filed November 30, 1990

*Jane Woodruff,* Washington County Deputy State's Attorney, Barre, for Plaintiff-Appellee.

*Steven B. McLeod,* Montpelier, for Defendant-Appellant.

**Dooley, J.** The defendant was convicted of simple assault following a trial by jury. Both at arraignment and throughout the trial he represented himself. He appeals his conviction, presenting the issue whether he made a knowing and intelligent waiver of his right to counsel. The record below is insufficient to determine whether the waiver was knowing and intelligent. Accordingly, the judgment is stricken and the case remanded for the trial court to consider such post-trial motions as would allow the trial court in the first instance to determine whether the waiver was knowing and intelligent.

The trial judge had two discussions with the defendant about representation. The first took place at arraignment. The trial judge first asked defendant if he wanted to "talk to the public defender or hire an attorney." Defendant replied that he did not. He was then asked whether he wanted to represent himself, to which he answered, "Yes, that's correct." After dealing with whether the defendant had heard his rights read, and reviewing a copy of the information and affidavit, and his plea of not guilty, the judge advised him in several interchanges that he might do better to have the advice of an attorney. First, the judge suggested, "[I]f I were you, I would consult with counsel. And I'd be happy to give you some time to talk to Mr. Rubin here or if you'd like to hire counsel you'll be given an opportunity to do that." The judge also said, "And before you talk to a police officer or the State it would be probably a good idea to talk to an attorney about it [be]cause it is a serious offense."

After defendant attempted to begin discussion of his self-defense defense, the trial judge asked him not to "get into that now," saying:

> Because whatever you say now can be used against you later. But if you have questions about that and whether you

do have a defense and whether the charges are—are valid or not, you should talk to a lawyer about that. And Mr. Rubin is here today if you want to talk to him [about] it?

Defendant stated, "No, I feel I'm—I'm old enough to represent myself," to which the judge responded, "I see you are old enough. But I would suggest to you, sir, that an attorney might have some knowledge that you might not about what a valid defense would be or wouldn't be," and asked him what he would like to do at that point. He persisted both in his plea of not guilty and, in response to the judge's question "Are you going to hire an attorney" said, "No, I'll be *pro se*." The judge inquired, "You'll be representing yourself?" and defendant responded, "That's correct." He was given the waiver form to sign, and the rest of the arraignment formalities were completed.

The second discussion between defendant and the judge about defendant's representation took place at trial. During defendant's opening statement, he said, "This is kind of hard for me, you know, I don't have a lawyer. I can't afford to have one, so I have to do this myself." The trial judge called defendant and the prosecuting attorney to the bench, and told defendant:

> Mr. Merrill, when you were arraigned . . . I explained to you that you had or might have a right to have a public defender. At that time, you chose not to apply for one. Now do you, at this point, want a public defender, because if you can't afford a lawyer, I will assign one to you?

After continued inquiry yielded Mr. Merrill's statement that he did not want to "tie up the Court," the trial judge said:

> It's not a question of tying up the Court, Mr. Merrill. Your statement to the jury was inappropriate. Now I'm not going to say anything because I'm afraid at this point it might prejudice your case, but I'm quite upset about the statement to . . . the jury because it is inappropriate. You have a right that was explained to you, and I'm perfectly willing to let you exercise that right if you'd like to apply for a public defender, even to the point of continuing today's proceeding, if that's what you want. Now is it?

Defendant answered, "No," and reaffirmed that he was proceeding pro se and waiving his right to counsel.

This case presents the state of tension between two constitutional rights: the right to counsel, *Gideon v. Wainwright*, 372

U.S. 335, 344 (1963); *State v. Hartman*, 134 Vt. 64, 65, 349 A.2d 223, 225 (1975), and the right to proceed without counsel, *Faretta v. California*, 422 U.S. 806 (1975); *State v. O'Connell*, 147 Vt. 60, 64, 510 A.2d 167, 169 (1986). The waiver of the one right may amount to the assertion of the other, putting the trial court in what one court has called the "new, and unenviable, position" of having to choose between providing counsel if defendant's attempted waiver of his constitutional right to counsel is inadequate, and granting a defendant's request for self-representation if that choice is made "competently and intelligently." *United States v. Bailey*, 675 F.2d 1292, 1300 (D.C. Cir. 1982).

■ Neither a defendant's waiver of his right to counsel nor his assertion of his right to proceed pro se may be presumed from a silent record. While it is abundantly clear from the record in this case that defendant was repeatedly offered counsel, and that he expressed his intent to proceed pro se,[1] the nature of his understanding of the risks involved, and therefore whether the decision was made competently and intelligently, is less apparent from the record.

■ In order to protect both competing constitutional rights, the better practice is for the trial court first to conduct sufficient inquiry into the defendant's experience, motives, and understanding of what he is undertaking to determine the quality of his purported waiver, *State v. Hartman*, 134 Vt. at 66, 349 A.2d at 225, and then to provide a clear explanation of the adverse consequences of pro se representation. *State v. Ahearn*, 137 Vt. 253, 262, 403 A.2d 696, 702 (1979). This discussion should appear on the record so that a reviewing court may determine that the defendant knowingly accepted the risk. *State v. O'Connell*, 147 Vt. at 65, 510 A.2d at 170. A defendant may need to be advised of the available options to protect his rights to counsel, the full nature of the charges against him, the range of allowable punishment, and the consequences of proceeding

---

[1] Defendant applied for appointment of counsel on appeal, and was denied as financially ineligible. His income had been at least as great at the time of trial. Thus, his only alternative at the time of trial would have been for him to retain counsel, and he was quite insistent from his first appearance in court that he refused to do so.

without the aid of an attorney. *State v. Quintin*, 143 Vt. 40, 44, 460 A.2d 458, 460–61 (1983); *State v. Ahearn*, 137 Vt. at 262, 403 A.2d at 702; *State v. Hartman*, 134 Vt. at 66, 349 A.2d at 225.

■ We are unwilling to accept, as defendant argues and the concurring opinion endorses, that all information for our review must necessarily appear in the *original* trial court record in every case. In a relatively close case, specific circumstances, such as a defendant's past experience in representing himself, or pretrial attempts to obtain or to fire counsel, or even his conduct at trial, may reveal that in-depth inquiry or extensive advice is not necessary in that particular case to protect the constitutional rights of the unrepresented defendant. See *State v. O'Connell*, 147 Vt. at 65–66, 510 A.2d at 170. In such cases, we must know not only what the trial judge has told the defendant, but also what the defendant understands about the consequences of self-representation, so that it can be determined whether he has chosen intelligently and competently to proceed pro se. *United States v. Kimmel*, 672 F.2d 720, 722 (9th Cir. 1982).[2] This type of information may or may not be available from the original trial court record. We are not willing to reverse a conviction of a defendant who in fact knowingly and intelligently waived the right to counsel simply because the record does not decisively show his knowledge and intelligence. It will be necessary in some cases to supplement that record to properly decide whether there has been a valid waiver of counsel.

---

[2] Other courts have adopted this approach to trial court examination of the quality of a defendant's waiver. *United States v. Hafen*, 726 F.2d 21 (1st Cir.), *cert. denied*, 466 U.S. 962 (1984); *United States v. Bailey*, 675 F.2d 1292 (D.C. Cir.), *cert. denied*, 459 U.S. 853 (1982); *United States v. Trapnell*, 638 F.2d 1016 (7th Cir. 1980); *United States v. Tompkins*, 623 F.2d 824 (2d Cir. 1980); and see, e.g., *State v. Gethers*, 193 Conn. 526, 539, 480 A.2d 435, 443 (1984); *State v. Walls*, 501 A.2d 803, 805 (Me. 1985); *Commonwealth v. Lee*, 394 Mass. 209, 475 N.E.2d 363 (1985). There is, however, a split among the federal circuit courts on this question. See *McDowell v. United States*, 484 U.S. 980 (1987) (White, J., dissenting from denial of certiorari and urging that the Court resolve the conflict among the circuit courts). We endorse the use of a remand for further fact-finding only in the relatively close case, such as this one, where the fact-finding can show whether the assertion of the right to proceed pro se was intelligent and competent.

■ In cases where a further record must be developed, the inquiry is identical to that for waiver of other important rights, such as the waiver of *Miranda* rights. See *State v. Austin*, 155 Vt. 531, 534, 586 A.2d 545, 546 (1990); *State v. Stanislaw*, 153 Vt. 517, 529, 573 A.2d 286, 293 (1990); *State v. Olson*, 153 Vt. 226, 232, 571 A.2d 619, 623 (1989); *State v. Malinowski*, 148 Vt. 517, 520–23, 536 A.2d 921, 923–25 (1987) (lists earlier *Miranda* waiver cases). It is a totality of circumstances approach. See *Fare v. Michael C.*, 442 U.S. 707, 725 (1979).

This is a relatively close case where further fact-finding can show whether defendant's waiver was intelligent and competent. The record here, including the absence of an in-depth inquiry by the trial judge into defendant's knowledge of the consequences of a waiver, is very close to that present in *Faretta v. California*, the leading case on the right of self-representation. There, the Court characterized the defendant as "literate, competent, and understanding and . . . voluntarily exercising his informed free will" and found that "Faretta clearly and unequivocally declared to the trial judge that he wanted to represent himself and did not want counsel." 422 U.S. at 835. The Supreme Court found a waiver of the right to counsel and a valid assertion of the right to self-representation in that case. *Id.*

The adjectives used to describe the defendant in *Faretta* are equally applicable here. Defendant showed his intelligence and understanding through his motion to dismiss, his negotiation with the state's attorney and his argument to the jury. He was at the time of the alleged crime in a supervisory position with the City of Montpelier. There is no indication that his appearance pro se was involuntary, except possibly to the extent that he felt he could not afford a lawyer or was unwilling to spend money on one. He was very firm in his expressions of his decision to appear pro se, including confirming that decision in a written waiver. *State v. Conn*, 152 Vt. 99, 103–05, 565 A.2d 246, 248 (1989).

■ In order to apply the above procedure in the present case, we remand for the trial court to hold a hearing to determine the nature of defendant's understanding regarding his right to counsel and his right to self-representation at the time of trial. Such a proceeding is appropriate to the development of

the facts necessary to determine if a waiver was knowing, voluntary, and intelligent. *United States v. Tompkins*, 623 F.2d 824, 829 (2d Cir. 1980); see *State v. Walls*, 501 A.2d 803, 806 (Me. 1985). The trial court's findings from this proceeding will inform its discretion as to whether to strike or vacate the judgment.

*Remanded for trial court proceedings not inconsistent with this opinion.*

**Mahady, J.,** concurring. I concur that this case must be remanded to the trial court. I would, however, remand for a new trial rather than for a hearing to determine the nature of defendant's understanding regarding his right to counsel and his right to self-representation at the time of trial.

As the majority correctly notes, "[t]he record below is insufficient to determine whether the waiver [of defendant's right to counsel] was knowing and intelligent." Under such circumstances, there can be no effective waiver.

The right to counsel "is indispensable to the fair administration of our adversary system of criminal justice." *Brewer v. Williams*, 430 U.S. 387, 398 (1977). Of course, a criminal defendant also has the right of self-representation, but before a defendant relinquishes his right to an attorney the defendant must "knowingly and intelligently" waive that right by a choice "made with eyes open." *Faretta v. California*, 422 U.S. 806, 835 (1975). We must "indulge every reasonable presumption against waiver" unless it is shown that a defendant made "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). When it is in derogation of an important right, as is the right of counsel, waiver will not be inferred from doubtful conduct. *State v. Quintin*, 143 Vt. 40, 43, 460 A.2d 458, 460 (1983).

In effect, the Court today overrules *Quintin*. There, as here, we noted the absence of evidence that the defendant's background and experience were explored. We concluded, "Lacking such evidence, the defendant cannot be held to have made a knowing and intelligent waiver." *Id.* at 44, 460 A.2d at 461. Likewise, the Court effectively overrules *In re Huard*, 125 Vt. 189, 212 A.2d 640 (1965). There the record below was confusing and inadequate to support a finding of a waiver of the right to counsel. *Id.* at 193–94, 212 A.2d at 644–45.

Never have we remanded such a case in an effort to put Humpty Dumpty back together again. We trivialize a fundamental constitutional right by allowing the State to try its case as to the waiver of that right by trial and error. Where the record is inadequate to establish the waiver of a constitutional entitlement, there simply is no waiver. *Johnson v. Zerbst*, 304 U.S. at 465, 469; *State v. Quintin*, 143 Vt. at 44, 460 A.2d at 461; *In re Huard*, 125 Vt. at 194, 212 A.2d at 645. Until today, there was in Vermont no doubt as to that important principle which is essential to a free society.

**Peck, J.**, dissenting. I am unable to agree with the result reached by the majority. Accordingly, I feel compelled to file this dissent. I would affirm.

If the record left any doubt as to defendant's intelligence or ability to understand the proceedings against him, including his right to counsel, or suggest any confusion on his part, I would be more inclined to concur with the exhaustive litany which the majority recites as requirements to be followed by the trial courts in determining whether or not a waiver of counsel is "knowing and intelligent."

I do not disagree that compliance with the full panoply, as outlined in the majority opinion may be, as the opinion suggests, "the better practice," in all cases; nevertheless, it should not be cast in unyielding stone as a rigid *sine qua non*. In the absence of such a catechism, the issue should be resolved from the record on a case-by-case basis.

In my judgment the repeated efforts by the trial court in this case to protect defendant's right to counsel were more than sufficient. As it is, the majority has created a trap which snaps shut if a single item of the litany is omitted regardless of other considerations. It produces, at the very least, automatic grounds for an appeal and at least a remand for further findings if not a new trial.

A factor not addressed by the majority is the strength of the State's evidence during the trial. It was persuasive to a degree that the verdict seems to me inevitable. It is unlikely that an acquittal would result even if defendant had been represented by an attorney. Any error was harmless. *State v. Begins*, 148 Vt. 186, 189–90, 531 A.2d 595, 597 (1987).

Since I am unable to agree with the result, it states the obvious to say that I am also unable to agree with the concurring opinion. It would stretch even further the unwarranted result and the consequences thereof reached by the majority. Given the scope of defendant's grasp of the proceedings, as disclosed by the record in *this* case, the steps taken by the trial judge in protecting his right to counsel should not be called either "confusing" or "inadequate"; certainly defendant himself exhibited not the slightest suggestion of confusion. Notwithstanding the court's frequent attempts to persuade him to obtain counsel, to the extent that the judge indicated defendant might consult an experienced attorney who was apparently present in the courtroom, he stubbornly insisted on representing himself. The issue was not raised until after the fact of the verdict. In effect, he kept a card in his sleeve as a safeguard against an unfavorable verdict; the jury found him guilty based on the strong evidence against him, whereupon, with a triumphant flourish he now produces his ace in the hole.