## STATE of Vermont v. Ryan STENSON

[738 A.2d 567]

No. 98-043

June 24, 1999. Defendant appeals from his convictions for driving under the influence of alcohol (DUI) and for retail theft. He seeks to have the convictions reversed, arguing that: (1) the arresting officer violated Vermont Rule of Criminal Procedure 3(a)(5) by questioning defendant at the police barracks, (2) the police should not have questioned defendant without an attorney present when there had already been an initial consultation with an attorney, and (3) he did not knowingly and intelligently waive his constitutional right to counsel at trial. We affirm.

Defendant argues that his conviction should be reversed because the arresting officer went beyond the limited scope of a DUI arrest, as defined by Vermont Rule of Criminal Procedure 3(a)(5), by questioning defendant at the police barracks. In *State v. Forcier* we held that, where a defendant was interrogated upon being stopped for a breath test, the statements made by defendant during the interrogation violated Vermont Rule of Criminal Procedure 3(a)(5), which limited the purpose of the stop to obtaining a sample of breath or blood. See 162 Vt. 71, 77, 643 A.2d 1200, 1203 (1994). Our holding in that case rested entirely on the legislative intent and the plain meaning of the language of Rule 3(a)(5): detention for DUI can serve only "the limited purpose of obtaining a sample of breath or blood." *Id.* at 75, 643 A.2d at 1201. Since our decision in that case, the Legislature has amended Rule 3(a)(5) to strike this precise language. See 1997, No. 117 (Adj. Sess.), § 30. Therefore defendant's argument on this basis necessarily fails.

Defendant also argues that the waiver of his Miranda rights that he executed before the interrogation is invalid because the police questioned defendant without an attorney present after he had already had an initial consultation with an attorney. This argument is similarly without merit. It is true that a defendant who has invoked a constitutional right to an attorney may not be further interrogated without the defendant's attorney being present. See *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981) (defendant who invokes the Fifth Amendment right to counsel during custodial interrogation may not be subjected to further interrogation until counsel is made available to defendant). The right to speak to an attorney provided by 23 V.S.A. § 1202(c), however, is not grounded in either the

Vermont or United States Constitution, but only in the statute itself. See *State v. Nemkovich*, 168 Vt. 8, 12, 712 A.2d 899, 901 (1998) (constitutional protections available in criminal proceedings do not attach to statutory right to counsel under 23 V.S.A. § 1202(c); right to advice of counsel created in *Miranda* does not apply because decision to take breath test is not critical stage of prosecution and because evidence sought is physical rather than testimonial). Requesting an attorney under 23 V.S.A. § 1202(c) is not in itself equivalent to invoking the constitutional right to an attorney, which is the right to which the *Edwards* rule applies.

Our holding in *State v. Garvey*, 157 Vt. 105, 107, 595 A.2d 267, 268 (1991), out of which the right provided by 23 V.S.A. § 1202(c) arose, makes clear that the right to have an attorney contacted before deciding to take a breath test stems from the unique circumstances associated with the DUI stop. The purpose of affording a right to contact counsel in this situation is distinct from the constitutional right to an attorney under the Fifth Amendment to the United States Constitution and Article Ten of the Vermont Constitution. Therefore, the fact that defendant exercised his statutory right to contact an attorney before taking the breath test did not affect the validity of the waiver of the right to counsel that he signed prior to being questioned by police.

Finally, defendant argues that his conviction should be reversed because he did not knowingly and intelligently waive his right to counsel. Although defendant seeks to characterize this as a question of the validity of his waiver, it is apparent from his conduct, discussed below, that defendant was entirely capable of obtaining an attorney and was using the representation issue as a tactic to delay the proceedings. Thus, while the record is somewhat sparse on the topic of the waiver, defendant's conduct makes clear that the conflict was about defendant's disregard for the court process rather than any lack of understanding of his right to an attorney or the means by which to obtain one.

Defendant initially applied for a public defender on April 21, 1997, but was denied as ineligible because his income was too high. A calendar call was set for June 9, 1997. Defendant represented himself at the calendar call, though he told the court that he wanted to reapply for a public defender and that, if he were again found ineligible, he would then work out something with a private attorney (Mr. Benning). The court concluded that defendant was still ineligible for a public defender because his income had actually risen in the meantime. By this time, the jury drawing was scheduled for the next day, and defendant requested a continuance to allow his attorney to acquaint himself with the case. The court denied defendant's request, pointing out that defendant had not taken any steps in the interim to secure counsel other than reapplying for a public defender, and defendant must have known he would be found ineligible because his income had increased since the time of his last application. The June 10 jury drawing was continued on June 11, rescheduled for July 8, and rescheduled again on July 9 for August 13.

Defendant's attorney, Mr. Benning, appeared at the jury drawing scheduled for August 13, 1997, but defendant did not. Mr. Benning explained to the court that, even though he had discussed the date of the jury drawing with defendant and believed defendant had received notice of the jury drawing from the court, defendant nonetheless had chosen to be out of state on that day. Mr. Benning's subsequent request to withdraw as counsel was granted, and an arrest warrant was issued for defendant.

Defendant appeared before the court on August 25, 1997 after being arrested

for failure to appear at the August 13 jury drawing. The court advised defendant that jury drawing was now set for September 16 and told defendant:

> [I]f you want a lawyer to help you out, you have between now and then to get one. It's up to you. There's not going to be any more continuances. So if the lawyer comes in, I guess he or she is going to have to be ready to hit the ground in this case.

Later on in the proceedings, the court explained defendant's right to an attorney:

> You're representing yourself today. I understand that you had a lawyer at one point. You're not eligible for a public defender, but I need to make sure you know you're entitled to have a lawyer at your own expense and that lawyer might be able to see a problem with the State's case that you might not see, and a lawyer can give you advice about the rules and the law that applies here and without that advice you are at a disadvantage. Do you understand that?
>
> Defendant: Yes.
>
> The court: Do you want to proceed and represent yourself anyway?
> Defendant: Yes.

At trial, defendant appeared pro se and was convicted of driving under the influence.

A defendant's waiver of the right to counsel must be knowing and intelligent. See *Davis v. United States*, 512 U.S. 452, 457 (1994) (right to counsel recognized in *Miranda* is sufficiently important that it requires special protection of knowing and intelligent waiver standard). This requires the trial court to conduct an inquiry into the nature of a defendant's understanding of the rights he is waiving. The trial court should seek to uncover a defendant's "experience, motives, and understanding of what he is undertaking" and provide "a clear explanation of the adverse consequences of pro se representation." *State v. Merrill*, 155 Vt. 422, 425, 584 A.2d 1129, 1131 (1990).

The above cases, however, deal with situations where there is a valid question about whether a defendant understood that there was a right to counsel. This was not the situation faced by the court in the instant case. Defendant demonstrated that he knew he had a right to counsel and he expressed his desire to be represented by an attorney, but was unwilling to pay for it. Thus, it was not a situation where the court needed to provide the defendant with a lengthy and detailed explanation of his rights or to carefully probe his understanding. See *id.* at 425-26, 584 A.2d at 1131 (while some defendants may need more thorough explanation of trade-offs in order to understand consequences of waiver, other defendants may indicate through their statements and conduct that "in-depth inquiry or extensive advice is not necessary in that particular case to protect the constitutional rights of the unrepresented defendant").

In assessing whether defendant executed a valid waiver, we look to the totality of the circumstances. See *id.* at 427, 584 A.2d at 1132. In this case, defendant attempted twice to obtain a public defender, successfully obtained private counsel (until counsel withdrew due to defendant's failure to make a scheduled court appearance), and received the benefit of the trial court's explanation of his right to counsel. Furthermore, at the sentencing hearing, defendant's wife explained that defendant felt that "with legal representation . . . he might have been able to challenge what had happened," but that defendant "chose to up-

hold our commitment to the bank instead of getting a lawyer for the trial." Defendant's actions indicated that he wanted counsel and understood his right to counsel, but made a conscious choice based on his financial situation to represent himself. No further explanation by the court would have changed this situation.

The fact that the trial court refused to grant a continuance to allow defendant to obtain counsel is immaterial to the assessment of defendant's waiver in this case. The denial of a motion to continue will not be reversed absent a clear abuse of discretion. See *State v. Hicks*, 167 Vt. 623, 625, 711 A.2d 660, 662 (1998) (mem.). Here, defendant manifested a general disregard for the court process, and the trial court concluded that defendant did not make a serious effort to obtain counsel, despite the fact that he had the time and ability to do so. There was therefore no abuse of discretion.

*Affirmed.*