2007 VT 6

## State of Vermont v. Philip van Aelstyn

[917 A.2d 471]

No. 05-220

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed January 12, 2007

*William H. Sorrell,* Attorney General, and *John Treadwell,* Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Mark E. Furlan* of *Abatiell Associates, P.C.,* Rutland, and *Jeffrey A. Denner* and *Gary G. Pelletier* of *Denner Associates, PC,* Boston, Massachusetts, for Defendant-Appellant.

¶ 1. **Burgess, J.** Defendant challenges his convictions on two counts of extortion and one count of stalking following a jury trial. Defendant argues that he is entitled to a new trial because: (1) the district court failed to determine whether defendant intended to waive his right to counsel before the case went to trial, and (2) a post-conviction amendment to the stalking statute should be applied retroactively. We affirm.

¶ 2. Defendant, a licensed Vermont attorney who moved to California, had difficulty retaining counsel to represent him after his arraignment in February 2004 on two counts of extortion, 13 V.S.A. § 1701, and one count of stalking, 13 V.S.A. § 1062. In late August 2004, defendant's original attorney moved to withdraw. Defendant filed a notice of limited pro se appearance to address his counsel's request to withdraw. At a hearing on the motion, the court allowed counsel to withdraw despite defendant's expressed concern that the deadline for motions and discovery was not being extended and that he did not have funds to hire other counsel. Defendant nevertheless indicated that he would attempt to retain counsel and would keep the court informed of his situation.

¶ 3. Defendant hired a second attorney in late September. That attorney moved for and was granted leave to withdraw at the end of October. Defendant again filed a notice of limited pro se appearance to respond to the withdrawal motion and to move to continue a scheduled status conference. Again, defendant represented to the court that he intended to retain counsel despite financial limitations. Defendant did not retain other counsel, however, but instead filed a general notice of pro se appearance on November 29, apparently in response to the State's refusal to communicate directly with him until he entered such an appearance.

¶ 4. On December 7, defendant called the court to request a public defender application form, which was mailed to him. On December 10,

defendant filed three motions: (1) a motion to appoint a public defender; (2) a Rule 12(d) motion to dismiss; and (3) a motion to continue the scheduled December 13 jury draw. Defendant's request for appointed counsel did not include a public defender application form or otherwise disclose the financial information required for assignment of counsel by the court. See 13 V.S.A. § 5236 (providing for assignment of public defender based upon determination of financial need); A.O. 4, § 5(a) (determination of financial need "shall take place following the completion of the Application for Public Defender Services form"). The court denied defendant's public defender request, noting only that "Defendant has indicated his intent to proceed pro se." The court also denied the motion to continue the jury draw.

¶ 5. When defendant failed to appear for the draw, an arrest warrant was issued and a bail forfeiture hearing scheduled. Defendant then moved to strike the arrest warrant and stop bail forfeiture, contending that he did not believe the jury draw would take place because of many outstanding issues in the case, including appointment of a public defender. At the bail forfeiture hearing, defendant again noted the financial toll the case was taking on him, but the hearing concluded with the parties agreeing to appear at the next jury draw on January 18, 2005.

¶ 6. At the jury draw, the court asked defendant if he wished to be introduced to the prospective jurors as an attorney representing himself. Defendant agreed to this introduction, and the court stated:

The first matter before the court this morning is State v. Philip van Aelstyn. Mr. van Aelstyn is present and is representing himself. He, it happens that he is an attorney, but he is representing himself, which he's entitled to do. Of course, attorneys are also entitled to have attorneys, but he is representing himself today.

Defendant made no objection to the statement and proceeded through jury draw and trial without counsel. On the third day of trial, the jury returned guilty verdicts on all counts. Defendant was sentenced on May 13, 2005. Coincidentally, the stalking statute under which defendant was found guilty in January and sentenced in May 2005, was amended effective July 1, 2005. 2005, No. 83, § 4 (amending definition of "stalk" in 13 V.S.A. § 1061); 1 V.S.A. § 212 (providing that laws take effect on July 1 following enactment unless otherwise provided).

## I.

¶ 7. Defendant argues that he was forced to proceed pro se without making a valid waiver of his constitutional right to counsel. Defendant does not argue that he was a needy person or that any of his rights under the Public Defender Act[1] were violated when the trial court summarily denied his motion to appoint counsel. For that reason, we do not address the language or merits of the trial court's denial of defendant's motion to appoint a public defender. Rather, we confine our inquiry to defendant's argument that his motion to appoint counsel was one of numerous expressions of his desire for representation that were ignored by the trial court — forcing him to proceed to trial pro se without making a knowing and voluntary waiver of his right to counsel.

¶ 8. The United States and Vermont constitutions provide that a criminal defendant has a right to legal counsel. U.S. Const. amend. VI; Vt. Const. ch. I, art. 10. Valid waiver of this right must be voluntary, knowing, and intelligent. *State v. Brown*, 2005 VT 104, ¶¶ 21-23, 179 Vt. 22, 890 A.2d 79; *State v. Stenson*, 169 Vt. 590, 592, 738 A.2d 567, 570-71 (1999) (mem.). In determining whether these criteria were met, we consider the totality of circumstances including the "background, experience, and conduct of the accused." *State v. Ahearn*, 137 Vt. 253, 260-61, 403 A.2d 696, 701-02 (1979). Valid waiver often "requires the trial court to conduct an inquiry into the nature of a defendant's understanding of the rights he is waiving. . . . and provide a clear explanation of the adverse consequences of pro se representation." *Stenson*, 169 Vt. at 592, 738 A.2d at 571 (quotations omitted). However, this inquiry is not required when it is apparent that the defendant understands his right to counsel. *Id.* (finding valid waiver when defendant "demonstrated that he knew he had a right to counsel and he expressed his desire to be represented by an attorney, but was unwilling to pay for it"); see *State v. Merrill*, 155 Vt. 422, 426, 584 A.2d 1129, 1131-32 (1990) (stating that "specific circumstances, such as a defendant's past experience in representing himself, or pretrial attempts to obtain or to fire counsel . . . may reveal that in-depth inquiry or extensive advice is not necessary"). But the understanding and intent to waive counsel must be clear; the absence of a colloquy may not be

---

[1] A needy person charged with a serious crime has the right to "be represented by an attorney to the same extent as a person having his own counsel." 13 V.S.A. § 5231(1).

justified solely by a defendant's silence or other equivocal conduct. *State v. Tribble*, 2005 VT 132, ¶¶ 27-28, 179 Vt. 235, 892 A.2d 232 (finding no valid waiver where there was no colloquy and defendant continued to insist that he have court-appointed counsel as late as the day that the trial was scheduled to begin).

## A. Voluntary Waiver

¶ 9. Defendant first contends that his waiver of counsel was involuntary. Defendant's argument is premised on the trial court having allowed two privately hired attorneys to withdraw from his case and ignoring his repeated assertions that he wanted an attorney to represent him at trial. Defendant, however, acquiesced to both attorneys' withdrawals. When his first attorney moved to withdraw in August 2004, defendant expressed concern about upcoming deadlines but also stated that he lacked faith in his attorney's abilities and wanted a refund of the fees he paid her. When defendant's second attorney moved to withdraw in October, defendant stated in his response that he "respectfully object[ed]" to his attorney's withdrawal, but would consent if he was "afforded a reasonable amount of time to locate and engage replacement counsel." Defendant requested ninety days to accomplish that task, but was afforded forty-nine days. The motion to withdraw was granted October 25, and on November 1 the trial court granted defendant's motion to continue the status conference scheduled for the following day. Jury draw was set for December 13.[2] Jury draw was rescheduled for January after defendant failed to appear for the December draw. In all, defendant had eighty-five days from the time of his second attorney's withdrawal in October to the January jury draw to hire counsel or file a public defender application, if he desired.[3] Given the elapsed time, the trial court's granting of the motions for withdrawal did not force defendant to go to trial pro se.

---

[2] After the second motion to withdraw was granted, defendant filed an "Objection to Granting Leave to Withdraw without Hearing; Request for Court Order Requiring the State to Communicate with Defendant; and Request for Clarification Regarding Schedule." In that motion, defendant stated that he objected to the court granting a motion to withdraw without hearing and requested his objection be noted on the record. We find defendant's subsequent objection irrelevant to the present discussion because his objection was not that his attorney was allowed to withdraw, but that she was allowed to withdraw without a hearing. In any event, defendant acceded to withdrawal, provided he had a reasonable opportunity to secure replacement counsel.

[3] Defendant made no showing, to the trial court or on appeal, that the forty-nine days initially allowed, or the eighty-five days that actually passed between withdrawal of

¶ 10. The voluntariness of defendant's waiver is further supported by the notice of general pro se appearance he filed on November 29. Defendant's first two notices of pro se appearance articulated specific limits on his appearance, expressly stating in the second notice that he did not intend to waive his right to counsel. Defendant's third notice of appearance included no such limit to his appearance or reservation of his right to counsel. Defendant simply stated that he was entering his appearance pro se and requested that copies of all filings be sent to him. The absence of any limitation in the November 29 notice, particularly when defendant had placed limitations in the two previous notices of appearance, reflects a voluntary intent to proceed pro se.

¶ 11. Defendant cites his December 10 motion to appoint counsel and his December 16 motion to prevent bail forfeiture — when defendant identified his lack of counsel as an outstanding issue — as instances when he signaled to the court that he did not wish to proceed pro se. We do not find defendant's conduct after entering his general pro se appearance so equivocal that a colloquy was required. Cf. *Tribble*, 2005 VT 132, ¶ 28 (finding no valid waiver where there was no colloquy and defendant continued to insist that he have court-appointed counsel as late as the day that the trial was scheduled to begin). During this time, defendant continued to file motions on his own behalf that indicated a continued intent to self-representation, including a "Motion to Dismiss for Lack of Prima Facie Case." Though defendant's motion to dismiss stated he was appearing pro se for "the time being" in order to file the motion, defendant's request for, and subsequent references to, a public defender focused only on his unsupported assertions of financial difficulties[4] and allegations against his hired attorneys.

¶ 12. At the bail forfeiture hearing on January 3, 2005, for example, defendant noted the difficulty of repeatedly traveling coast to coast to appear for hearings and stated "this matter is draining me financially. That's why I asked for representation." Then, at the close of the hearing, a discussion was had regarding what, if any, issues were outstanding. The state's attorney listed some evidentiary issues defendant had raised but stated they could be taken care of at the time of the

the second counsel and jury draw, were unreasonable time frames within which to secure representation.

[4] On this point, we note that defendant made similar statements of financial difficulty when his first attorney moved to withdraw, but nevertheless hired a second attorney.

jury draw. The state's attorney then stated that he thought nothing else remained "unless [defendant] had something else to bring up." Defendant replied "I don't, your honor," and agreed with the State's assessment. Despite claims of financial hardship, defendant never actually applied for public defender services. Further, at the jury draw, defendant did not raise the issue of his representation, but instead approved the court's comment to the jury that he was an attorney representing himself. Based on the totality of defendant's conduct, we conclude that his notice of general pro se appearance was not negated by his subsequent, but incomplete, request for a public defender, or his other statements of reservation to the court, and that defendant was not, in his words, "forced to waive" his right to counsel. After having eighty-five days to secure representation, and failing to apply for the public defender, defendant simply showed up for jury draw without a lawyer.

## B. Knowing and Intelligent Waiver

¶ 13. We next consider the totality of circumstances to determine whether defendant's waiver of counsel was made knowingly and intelligently. The fact that defendant is a lawyer may be considered in evaluating the effectiveness of his waiver but is not conclusive. *Glasser v. United States*, 315 U.S. 60, 70 (1942), *superseded on other grounds by statute as recognized in Bourjaily v. United States*, 483 U.S. 171, 177-78 (1987). Well-versed in the law or not, every defendant must "knowingly accept[] the risk" of proceeding pro se. *Merrill*, 155 Vt. at 425, 584 A.2d at 1131. For this reason, we have stated that when a defendant chooses to proceed without counsel, "the better practice is for the trial court first to conduct sufficient inquiry into the defendant's experience, motives, and understanding of what he is undertaking ... and then to provide a clear explanation of the adverse consequences of pro se representation." *Id.* However, like the majority of jurisdictions we "'require no sacrosanct litany for warning defendants against waiving the right to counsel' as 'the appropriate inquiry is what the defendant understood — not what the court said.'" 3 N. Hollander et al., Wharton's Criminal Procedure § 15:23, at 15-125 to 15-126 (14th ed. 2006) (quoting *United States v. Davis*, 269 F.3d 514, 519 (5th Cir. 2001); *United States v. Harris*, 683 F.2d 322, 325 (9th Cir. 1982)). We have found knowing and intelligent waivers when there was little or none of the suggested colloquy but circumstances nevertheless indicated that the waiver was knowing and intelligent. See, e.g., *Stenson*, 169 Vt. at 592, 738 A.2d at 571 (finding valid waiver when there was limited

colloquy, defendant twice applied for a public defender and defendant successfully hired private counsel who later withdrew); *State v. Lewis*, 155 Vt. 653, 654, 586 A.2d 550, 551-52 (1990) (mem.) (finding valid waiver when there was no colloquy based on defendant's apparent knowledge of the charges and possible penalties and signing a waiver of counsel form).

¶ 14. In determining whether a waiver of counsel was knowing and intelligent, we examine the background, experience, and conduct of the accused. *Merrill*, 155 Vt. at 426, 584 A.2d at 1131-32; *Ahearn*, 137 Vt. at 260-61, 403 A.2d at 701-02. Defendant was forty years old at the time of trial and seven years out of law school. He worked as an attorney, with a focus on land transactions, in Vermont from 1998 until 2001 when he moved to California. Defendant joined the California bar and practiced with several firms there from 2001 to 2004. Defendant's background indicates a level of intelligence and legal sophistication from which we can reasonably infer his knowledge of the right and importance of having counsel. This conclusion is supported by defendant's pretrial conduct.

¶ 15. When conducting a waiver-of-counsel colloquy, the court advises the defendant that an attorney would better understand the applicable substantive law and procedural rules and might identify issues in the case that could otherwise be overlooked. See *Tribble*, 2005 VT 132, ¶ 26 (noting that in conducting a colloquy, court should "provide a clear explanation of the adverse consequences of pro se representation" (quotations omitted)). It is evident that defendant appreciated these values of legal representation when he hired two attorneys, complained about their lack of diligence and ability, and sought a continuance to secure a third. Defendant also expressly understood that assigned counsel could be requested. Defendant's pretrial motions, both substantive and procedural, demonstrate an understanding of the charges against him and the serious penalties in the event of conviction. We can infer from defendant's actions, as well as his training and experience, that he was aware of the evidentiary and procedural rules applicable to trials, and the challenges they can present to litigants, and that he understood that another lawyer's perspective would be helpful in his defense. Thus, although defendant may not have been well-qualified to handle the task of criminal defense that he chose to undertake, he was eminently qualified by his back-

ground, training, and experience to make that choice with full knowledge of its consequences.

■ ¶ 16. On appeal, defendant points to numerous errors and gaffes in his self-representation to suggest that his waiver was not truly knowing. But defendant's own acknowledgment that he was not experienced enough to provide adequate self-representation, either before or after trial, does not invalidate his deliberate choice to proceed pro se. See *Wiesner v. Abrams*, 726 F. Supp. 912, 918 (E.D.N.Y. 1989) (holding that "even in cases where the accused is harming himself by insisting on conducting his own defense, respect for individual autonomy requires that he be allowed to go to jail under his own banner if he so desires if he makes the choice 'with eyes open'"); *Lewis*, 155 Vt. at 655, 586 A.2d at 552 (finding that right to self-representation is "constitutionally guaranteed even though [defendant] may conduct his own defense ultimately to his own detriment" (quotations omitted)).

## II.

¶ 17. Defendant argues that a post-conviction amendment to Vermont's stalking statute mandates that he receive a new trial. Defendant was found guilty of stalking in violation of 13 V.S.A. § 1062 in January 2005 and was sentenced in May 2005. In July 2005, 13 V.S.A. § 1061 was amended: the definition of "stalk," which had prohibited conduct that "causes *the person* to fear for his or her physical safety," a subjective test, was redefined to include only conduct that "would cause a *reasonable person* to fear for his or her physical safety," an objective test. 2005, No. 83, § 4 (emphasis added). The jury was instructed on the definition of "stalk" contained in § 1061 as it existed at the time of the offense and trial — with the subjective standard for fear. Defendant initially argued on appeal that the common law rule of retroactivity mandated that he receive a new trial, relying on language from *State v. Brown* that "a change in the law will be given effect while a case is on direct review." 165 Vt. 79, 83, 676 A.2d 350, 352 (1996) (quotations omitted). However, as the State pointed out, *Brown* was referring to changes brought about by judicial decision. The retroactive effect of statutory amendments is provided for by statute:

> The amendment or repeal of an act or statutory provision, except as provided in subsection (c) of this section [relating to punishment], shall not:
>
> . . . .

(3) Affect any violation of the act or provision amended or repealed, or any penalty or forfeiture incurred thereunder, prior to the effective date of the amendment or repeal . . . .

1 V.S.A. § 214(b).

■ ¶ 18. Accordingly, in his reply brief, defendant advances a different argument: that the amendments were "clarifying," not substantive, and thus have a retroactive effect. Defendant's citation to *United States v. Goines*, 357 F.3d 469 (4th Cir. 2004), is unpersuasive on this point. *Goines* construed an amendment to the federal sentencing guidelines, a document that specifically provided for the retroactive effect of clarifying amendments. *Id.* at 474 (citing U.S.S.G. § 1B1.11(b)(2)). The other case cited by defendant, *Murray v. Mattison*, 63 Vt. 479, 480, 21 A. 532, 532 (1891), stands for the proposition that amendments addressing "practice and procedure only" have retroactive effect. There is no basis for considering the amendment at issue to be procedural, and *Murray* is thus inapposite. Aside from defendant's mere assertion that clarifying amendments are procedural per se, this suggested exception to § 214(b) is unsupported by our statutes or case law and we decline to adopt it.

*Affirmed.*