State v. van Aelstyn (2005-220)

2007 VT 6

[Filed 12-Jan-2007]

 NOTICE: This opinion is subject to motions for reargument under
 V.R.A.P. 40 as well as formal revision before publication in the Vermont
 Reports. Readers are requested to notify the Reporter of Decisions,
 Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801 of
 any errors in order that corrections may be made before this opinion goes
 to press.


 2007 VT 6

 No. 2005-220


 State of Vermont Supreme Court

 On Appeal from
 v. District Court of Vermont,
 Unit No. 2, Chittenden Circuit

 Philip van Aelstyn February Term, 2006


 Michael S. Kupersmith, J.

 William H. Sorrell, Attorney General, and John Treadwell, Assistant
 Attorney General, Montpelier, for Plaintiff-Appellee. 

 Mark E. Furlan of Abatiell Associates, P.C., Rutland, and Jeffrey A. Denner
 and Gary G. Pelletier of Denner Associates, PC, Boston, Massachusetts, for
 Defendant-Appellant.


 PRESENT: Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.

 ¶ 1. BURGESS, J. Defendant challenges his convictions on two
 counts of extortion and one count of stalking following a jury trial. 
 Defendant argues that he is entitled to a new trial because: (1) the
 district court failed to determine whether defendant intended to waive his
 right to counsel before the case went to trial, and (2) a post-conviction
 amendment to the stalking statute should be applied retroactively. We
 affirm.
 
 ¶ 2. Defendant, a licensed Vermont attorney who moved to
 California, had difficulty retaining counsel to represent him after his
 arraignment in February 2004 on two counts of extortion, 13 V.S.A. § 1701,
 and one count of stalking, 13 V.S.A. § 1062. In late August 2004,
 defendant's original attorney moved to withdraw. Defendant filed a notice
 of limited pro se appearance to address his counsel's request to withdraw. 
 At a hearing on the motion, the court allowed counsel to withdraw despite
 defendant's expressed concern that the deadline for motions and discovery
 was not being extended and that he did not have funds to hire other
 counsel. Defendant nevertheless indicated that he would attempt to retain
 counsel and would keep the court informed of his situation. 


 ¶ 3. Defendant hired a second attorney in late September. That
 attorney moved for and was granted leave to withdraw at the end of October. 
 Defendant again filed a notice of limited pro se appearance to respond to
 the withdrawal motion and to move to continue a scheduled status
 conference. Again, defendant represented to the court that he intended to
 retain counsel despite financial limitations. Defendant did not retain
 other counsel, however, but instead filed a general notice of pro se
 appearance on November 29, apparently in response to the State's refusal to
 communicate directly with him until he entered such an appearance.
 
 ¶ 4. On December 7, defendant called the court to request a
 public defender application form, which was mailed to him. On December 10,
 defendant filed three motions: (1) a motion to appoint a public defender;
 (2) a Rule 12(d) motion to dismiss; and (3) a motion to continue the
 scheduled December 13 jury draw. Defendant's request for appointed counsel
 did not include a public defender application form or otherwise disclose
 the financial information required for assignment of counsel by the court. 
 See 13 V.S.A. § 5236 (providing for assignment of public defender based
 upon determination of financial need); A.O. 4, § 5(determination of
 financial need "shall take place following the completion of the
 Application for Public Defender Services form"). The court denied
 defendant's public defender request, noting only that "Defendant has
 indicated his intent to proceed pro se." The court also denied the motion
 to continue the jury draw. 

 ¶ 5. When defendant failed to appear for the draw, an arrest
 warrant was issued and a bail forfeiture hearing scheduled. Defendant then
 moved to strike the arrest warrant and stop bail forfeiture, contending
 that he did not believe the jury draw would take place because of many
 outstanding issues in the case, including appointment of a public defender. 
 At the bail forfeiture hearing, defendant again noted the financial toll
 the case was taking on him, but the hearing concluded with the parties
 agreeing to appear at the next jury draw on January 18, 2005.

 ¶ 6. At the jury draw, the court asked defendant if he wished to
 be introduced to the prospective jurors as an attorney representing
 himself. Defendant agreed to this introduction, and the court stated:

 The first matter before the court this morning is State v. Philip
 van Aelstyn. Mr. van Aelstyn is present and is representing
 himself. He, it happens that he is an attorney, but he is
 representing himself, which he's entitled to do. Of course,
 attorneys are also entitled to have attorneys, but he is
 representing himself today.

 Defendant made no objection to the statement and proceeded through jury
 draw and trial without counsel. On the third day of trial, the jury
 returned guilty verdicts on all counts. Defendant was sentenced on May 13,
 2005. Coincidentally, the stalking statute under which defendant was found
 guilty in January and sentenced in May 2005, was amended effective July 1,
 2005. 2005, No. 83, § 4 (amending definition of "stalk" in 13 V.S.A. §
 1061); 1 V.S.A. § 212 (providing that laws take effect on July 1 following
 enactment unless otherwise provided).
 
 I.

 ¶ 7. Defendant argues that he was forced to proceed pro se without
 making a valid waiver of his constitutional right to counsel. Defendant
 does not argue that he was a needy person or that any of his rights under
 the Public Defender Act (FN1) were violated when the trial court summarily
 denied his motion to appoint counsel. For that reason, we do not address
 the language or merits of the trial court's denial of defendant's motion to
 appoint a public defender. Rather, we confine our inquiry to defendant's
 argument that his motion to appoint counsel was one of numerous expressions
 of his desire for representation that were ignored by the trial
 court-forcing him to proceed to trial pro se without making a knowing and
 voluntary waiver of his right to counsel. 
 
 ¶ 8. The United States and Vermont constitutions provide that a
 criminal defendant has a right to legal counsel. U.S. Const. amend. VI;
 Vt. Const. ch. I, art. 10. Valid waiver of this right must be voluntary,
 knowing, and intelligent. State v. Brown, 2005 VT 104, ¶¶ 21-23, 179
 Vt. 22, 890 A.2d 79; State v. Stenson, 169 Vt. 590, 592, 738 A.2d 567,
 570-71 (1999) (mem.). In determining whether these criteria were met, we
 consider the totality of circumstances including the "background,
 experience, and conduct of the accused." State v. Ahearn, 137 Vt. 253,
 260-61, 403 A.2d 696, 701-02 (1979). Valid waiver often "requires the
 trial court to conduct an inquiry into the nature of a defendant's
 understanding of the rights he is waiving. . . . and provide a clear
 explanation of the adverse consequences of pro se representation." 
 Stenson, 169 Vt. at 592, 738 A.2d at 571 (quotations omitted). However,
 this inquiry is not required when it is apparent that the defendant
 understands his right to counsel. Id. (finding valid waiver when defendant
 "demonstrated that he knew he had a right to counsel and he expressed his
 desire to be represented by an attorney, but was unwilling to pay for it");
 see State v. Merrill, 155 Vt. 422, 426, 584 A.2d 1129, 1131-32 (1990)
 (stating that "specific circumstances, such as a defendant's past
 experience in representing himself, or pretrial attempts to obtain or to
 fire counsel . . . may reveal that in-depth inquiry or extensive advice is
 not necessary"). But the understanding and intent to waive counsel must be
 clear; the absence of a colloquy may not be justified solely by a
 defendant's silence or other equivocal conduct. State v. Tribble, 2005 VT
 132, ¶¶ 27-28, 179 Vt. 235, 892 A.2d 232 (finding no valid waiver where
 there was no colloquy and defendant continued to insist that he have
 court-appointed counsel as late as the day that the trial was scheduled to
 begin).

 A. Voluntary Waiver

 ¶ 9. Defendant first contends that his waiver of counsel was
 involuntary. Defendant's argument is premised on the trial court having
 allowed two privately hired attorneys to withdraw from his case and
 ignoring his repeated assertions that he wanted an attorney to represent
 him at trial. Defendant, however, acquiesced to both attorneys'
 withdrawals. When his first attorney moved to withdraw in August 2004,
 defendant expressed concern about upcoming deadlines but also stated that
 he lacked faith in his attorney's abilities and wanted a refund of the fees
 he paid her. When defendant's second attorney moved to withdraw in
 October, defendant stated in his response that he "respectfully object[ed]"
 to his attorney's withdrawal, but would consent if he was "afforded a
 reasonable amount of time to locate and engage replacement counsel." 
 Defendant requested ninety days to accomplish that task, but was afforded
 forty-nine days. The motion to withdraw was granted October 25, and on
 November 1, the trial court granted defendant's motion to continue the
 status conference scheduled for the following day. Jury draw was set for
 December 13. (FN2) Jury draw was rescheduled for January after defendant
 failed to appear for the December draw. In all, defendant had eighty-five
 days from the time of his second attorney's withdrawal in October to the
 January jury draw to hire counsel or file a public defender application, if
 he desired. (FN3) Given the elapsed time, the trial court's granting of
 the motions for withdrawal did not force defendant to go to trial pro se. ¶

 10. The voluntariness of defendant's waiver is further supported by
 the notice of general pro se appearance he filed on November 29. 
 Defendant's first two notices of pro se appearance articulated specific
 limits on his appearance, expressly stating in the second notice that he
 did not intend to waive his right to counsel. Defendant's third notice of
 appearance included no such limit to his appearance or reservation of his
 right to counsel. Defendant simply stated that he was entering his
 appearance pro se and requested that copies of all filings be sent to him. 
 The absence of any limitation in the November 29 notice, particularly when
 defendant had placed limitations in the two previous notices of appearance,
 reflects a voluntary intent to proceed pro se. 
 
 ¶ 11. Defendant cites his December 10 motion to appoint counsel and
 his December 16 motion to prevent bail forfeiture-when defendant identified
 his lack of counsel as an outstanding issue-as instances when he signaled
 to the court that he did not wish to proceed pro se. We do not find
 defendant's conduct after entering his general pro se appearance so
 equivocal that a colloquy was required. Cf. Tribble, 2005 VT 132, ¶ 28
 (finding no valid waiver where there was no colloquy and defendant
 continued to insist that he have court-appointed counsel as late as the day
 that the trial was scheduled to begin). During this time, defendant
 continued to file motions on his own behalf that indicated a continued
 intent to self-representation, including a "Motion to Dismiss for Lack of
 Prima Facie Case." Though defendant's motion to dismiss stated he was
 appearing pro se for "the time being" in order to file the motion,
 defendant's request for, and subsequent references to, a public defender
 focused only on his unsupported assertions of financial difficulties (FN4)
 and allegations against his hired attorneys.
 
 ¶ 12. At the bail forfeiture hearing on January 3, 2005, for
 example, defendant noted the difficulty of repeatedly traveling coast to
 coast to appear for hearings and stated "this matter is draining me
 financially. That's why I asked for representation." Then, at the close
 of the hearing, a discussion was had regarding what, if any, issues were
 outstanding. The State's attorney listed some evidentiary issues defendant
 had raised but stated they could be taken care of at the time of the jury
 draw. The State's attorney then stated that he thought nothing else
 remained "unless [defendant] had something else to bring up." Defendant
 replied "I don't, your honor," and agreed with the State's assessment. 
 Despite claims of financial hardship, defendant never actually applied for
 public defender services. Further, at the jury draw, defendant did not
 raise the issue of his representation, but instead approved the court's
 comment to the jury that he was an attorney representing himself. Based on
 the totality of defendant's conduct, we conclude that his notice of general
 pro se appearance was not negated by his subsequent, but incomplete,
 request for a public defender, or his other statements of reservation to
 the court, and that defendant was not, in his words, "forced to waive" his
 right to counsel. After having eighty-five days to secure representation,
 and failing to apply for the public defender, defendant simply showed up
 for jury draw without a lawyer.

 B. Knowing and Intelligent Waiver
 
 ¶ 13. We next consider the totality of circumstances to determine
 whether defendant's waiver of counsel was made knowingly and intelligently. 
 The fact that defendant is a lawyer may be considered in evaluating the
 effectiveness of his waiver but is not conclusive. Glasser v. United
 States, 315 U.S. 60, 70 (1942), superseded on other grounds by statute as
 recognized in Bourjaily v. United States, 483 U.S. 171, 177-78 (1987). 
 Well-versed in the law or not, every defendant must "knowingly accept[] the
 risk" of proceeding pro se. Merrill, 155 Vt. at 425, 584 A.2d at 1131. 
 For this reason, we have stated that when a defendant chooses to proceed
 without counsel, "the better practice is for the trial court first to
 conduct sufficient inquiry into the defendant's experience, motives, and
 understanding of what he is undertaking . . . and then to provide a clear
 explanation of the adverse consequences of pro se representation." Id. 
 However, like the majority of jurisdictions we " 'require no sacrosanct
 litany for warning defendants against waiving the right to counsel' as 'the
 appropriate inquiry is what the defendant understood-not what the court
 said.' " 3 N. Hollander et al., Wharton's Criminal Procedure § 15:23, at
 15-125 to 15-126 (14th ed. 2006) (quoting United States v. Davis, 269 F.3d
 514, 519 (5th Cir. 2001); United States v. Harris, 683 F.2d 322, 325 (9th
 Cir. 1982)). We have found knowing and intelligent waivers when there was
 little or none of the suggested colloquy but circumstances nevertheless
 indicated that the waiver was knowing and intelligent. See, e.g., Stenson,
 169 Vt. at 592, 738 A.2d at 571 (finding valid waiver when there was
 limited colloquy, defendant twice applied for a public defender and
 defendant successfully hired private counsel who later withdrew); State v.
 Lewis, 156 Vt. 653, 654, 586 A.2d 550, 551-52 (1990) (mem.) (finding valid
 waiver when there was no colloquy based on defendant's apparent knowledge
 of the charges and possible penalties and signing a waiver of counsel
 form).

 ¶ 14. In determining whether a waiver of counsel was knowing and
 intelligent, we examine the background, experience, and conduct of the
 accused. Merrill, 155 Vt. at 426, 584 A.2d at 1131-32; Ahearn, 137 Vt. at
 260-61, 403 A.2d at 701-02. Defendant was forty years old at the time of
 trial and seven years out of law school. He worked as an attorney, with a
 focus on land transactions, in Vermont from 1998 until 2001 when he moved
 to California. Defendant joined the California bar and practiced with
 several firms there from 2001 to 2004. Defendant's background indicates a
 level of intelligence and legal sophistication from which we can reasonably
 infer his knowledge of the right and importance of having counsel. This
 conclusion is supported by defendant's pretrial conduct. 
 
 ¶ 15. When conducting a waiver-of-counsel colloquy, the court
 advises the defendant that an attorney would better understand the
 applicable substantive law and procedural rules and might identify issues
 in the case that could otherwise be overlooked. See Tribble, 2005 VT 132,
 ¶ 26 (noting that in conducting a colloquy, court should "provide a clear
 explanation of the adverse consequences of pro se representation"
 (quotations omitted)). It is evident that defendant appreciated these
 values of legal representation when he hired two attorneys, complained
 about their lack of diligence and ability, and sought a continuance to
 secure a third. Defendant also expressly understood that assigned counsel
 could be requested. Defendant's pretrial motions, both substantive and
 procedural, demonstrate an understanding of the charges against him and the
 serious penalties in the event of conviction. We can infer from
 defendant's actions, as well as his training and experience, that he was
 aware of the evidentiary and procedural rules applicable to trials, and the
 challenges they can present to litigants, and that he understood that
 another lawyer's perspective would be helpful in his defense. Thus,
 although defendant may not have been well-qualified to handle the task of
 criminal defense that he chose to undertake, he was eminently qualified by
 his background, training, and experience to make that choice with full
 knowledge of its consequences.

 ¶ 16. On appeal, defendant points to numerous errors and gaffes in
 his self-representation to suggest that his waiver was not truly knowing. 
 But defendant's own acknowledgment that he was not experienced enough to
 provide adequate self-representation, either before or after trial, does
 not invalidate his deliberate choice to proceed pro se. See Wiesner v.
 Abrams, 726 F. Supp 912, 918 (E.D.N.Y. 1989) (holding that "even in cases
 where the accused is harming himself by insisting on conducting his own
 defense, respect for individual autonomy requires that he be allowed to go
 to jail under his own banner if he so desires if he makes the choice 'with
 eyes open' "); Lewis, 156 Vt. at 655, 586 A.2d at 552 (finding that right
 to self-representation is "constitutionally guaranteed even though
 [defendant] may conduct his own defense ultimately to his own detriment"
 (quotations omitted)). 

 II.
 
 ¶ 17. Defendant argues that a post-conviction amendment to
 Vermont's stalking statute mandates that he receive a new trial. Defendant
 was found guilty of stalking in violation of 13 V.S.A. § 1062 in January
 2005 and was sentenced in March 2005. In July 2005, 13 V.S.A. § 1061 was
 amended: the definition of "stalk," which had prohibited conduct that
 "causes the person to fear for his or her physical safety," a subjective
 test, was redefined to include only conduct that "would cause a reasonable
 person to fear for his or her physical safety," an objective test. 2005,
 No. 83, § 4 (emphasis added). The jury was instructed on the definition of
 "stalk" contained in § 1061 as it existed at the time of the offense and
 trial-with the subjective standard for fear. Defendant initially argued on
 appeal that the common law rule of retroactivity mandated that he receive a
 new trial, relying on language from State v. Brown that "a change in the
 law will be given effect while a case is on direct review." 165 Vt. 79,
 83, 676 A.2d 350, 352 (1996) (quotations omitted). However, as the State
 pointed out, Brown was referring to changes brought about by judicial
 decision. The retroactive effect of statutory amendments is provided for
 by statute:

 The amendment or repeal of an act or statutory provision, except
 as provided in subsection (c) of this section [relating to
 punishment], shall not:

 . . . .
 
 (3) Affect any violation of the act or provision amended or
 repealed, or any penalty or forfeiture incurred thereunder, prior
 to the effective date of the amendment or repeal . . . .

 1 V.S.A. § 214(b). 
 
 ¶ 18. Accordingly, in his reply brief, defendant advances a
 different argument: that the amendments were "clarifying," not substantive,
 and thus have a retroactive effect. Defendant's citation to United States
 v. Goines, 357 F.3d 469 (4th Cir. 2004), is unpersuasive on this point. 
 Goines construed an amendment to the federal sentencing guidelines, a
 document that specifically provided for the retroactive effect of
 clarifying amendments. Id. at 474 (citing U.S.S.G. § 1B1.11(b)(2)). The
 other case cited by defendant, Murray v. Mattison, 63 Vt. 479, 479, 21 A.
 532, 532 (1891), stands for the proposition that amendments addressing
 "practice and procedure only" have retroactive effect. There is no basis
 for considering the amendment at issue to be procedural, and Murray is thus
 inapposite. Aside from defendant's mere assertion that clarifying
 amendments are procedural per se, this suggested exception to § 214(b) is
 unsupported by our statutes or case law and we decline to adopt it.

 Affirmed. 


 FOR THE COURT:


 _______________________________________
 Associate Justice



------------------------------------------------------------------------------
 Footnotes


FN1. A needy person charged with a serious crime has the right to "be
 represented by an attorney to the same extent as a person having his own
 counsel." 13 V.S.A § 5231.

FN2. After the second motion to withdraw was granted, defendant filed an
 "Objection to Granting Leave to Withdraw without Hearing; Request for Court
 Order Requiring the State to Communicate with Defendant; and Request for
 Clarification Regarding Schedule." In that motion, defendant stated that
 he objected to the court granting a motion to withdraw without hearing and
 requested his objection be noted on the record. We find defendant's
 subsequent objection irrelevant to the present discussion because his
 objection was not that his attorney was allowed to withdraw, but that she
 was allowed to withdraw without a hearing. In any event, defendant acceded
 to withdrawal, provided he had a reasonable opportunity to secure
 replacement counsel.

FN3. Defendant made no showing, to the trial court or on appeal, that the
 forty-nine days initially allowed, or the eighty-five days that actually
 passed between withdrawal of the second counsel and jury draw, were
 unreasonable time frames within which to secure representation.

FN4. On this point, we note that defendant made similar statements of
 financial difficulty when his first attorney moved to withdraw, but
 nevertheless hired a second attorney.